UNITED STATES POSTAL
SERVICE, Plaintiff,

v.

NATIONAL ASSOCIATION OF
LETTER CARRIERS,
AFL–CIO.

Civ. A. No. 86–2683.

United States District Court,
W.D. Pennsylvania.

July 8, 1987.

J. Alan Johnson, U.S. Atty., Albert W. Schollaert, Asst. U.S. Atty., Mason D. Harrell, Jr. Senior Atty., Office of Labor Law, U.S. Postal Service, Washington, D.C., for plaintiff.

Keith E. Secular and John S. Bishop, Cohen, Weiss and Simon, New York City, Stanley Greenfield, Pittsburgh, Pa., for defendant.

OPINION

GERALD J. WEBER, District Judge.

Edward Jackson followed a profane shouting match with his supervisor by pumping two (2) bullets through the windshield of the supervisor's empty parked car. To no one's surprise he was discharged. Incredibly though an arbitrator subsequently rewarded Jackson with reinstatement and partial back pay. Because the arbitrator's award contravenes public policy, the collective bargaining agreement, the arbitrator's own findings, and all notions of logic and reason, we reverse.

FACTS

Edward Jackson is a black male who served the Postal Service for 13 years as a

letter carrier. Although desirous of promotion and rated "excellent" in a competitive evaluation, Jackson was not afforded the training necessary to qualify for supervisory positions.

Jackson complained to his unit's Equal Employment Opportunity (EEO) officer of racial bias in the refusal to provide him with training. In response, management raised complaints about Jackson's attitude and work performance. With the assistance of the EEO officer, Jackson and his supervisor reached an agreement which conditioned future training on improvement in Jackson's attitude and performance.

Over the next several months, Jackson was cited several times for uniform violations and once for harassing a fellow employee. He was again denied training prompting a second call to the EEO officer.

A second meeting between Jackson and his supervisor under the eye of the EEO officer degenerated into acrimony. Jackson directed a profane tirade at his supervisor, and stormed out declaring: "You have not heard the last of this."

If the supervisor had next heard from Jackson in the dispute resolution mechanism of further EEO proceedings, perhaps the result would have been happier. Instead, while off-duty that same evening, Jackson drove past the supervisor's car, empty, parked outside a restaurant frequented by the supervisor. Jackson stopped, drew a .357 Magnum handgun he carried in his car, and fired two shots through the car's windshield.

The supervisor did not witness the incident, but Jackson was suspected from the start. When initially questioned by police he lied, but eleven (11) days after the incident Jackson confessed. He was arraigned and pled guilty to a charge of criminal mischief: sentence—1 year probation.

After his confession Jackson was immediately suspended without pay and subsequently discharged. The Union filed a grievance and when the parties could not agree, the matter was submitted to binding arbitration. The arbitrator was presented with two questions: a) was the suspension prior to discharge appropriate under the collective bargaining agreement, and b) was Jackson discharged for just cause. The arbitrator answered No to both questions, reduced Jackson's discipline to 5 months suspension without pay, ordered reinstatement without loss of seniority, and awarded back pay for the period of the suspension prior to discharge.

The Postal Service has appealed, arguing that the arbitrator's award is contrary to public policy and should be overturned. The parties have filed cross-motions for summary judgment with supporting briefs and there are no issues of material fact.

## ANALYSIS

■ Without doubt the scope of review of an arbitrator's award is severely limited. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *Graphic Arts International Union v. Haddon Craftsmen, Inc.*, 796 F.2d 692 (3d Cir.1986). However, the court has a duty to vacate an award that is contrary to public policy. *W.R. Grace & Co.*, 461 U.S. 766, 103 S.Ct. at 2183; *See also, Griesmann v. Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66, 74, n. 13, and cases cited therein (3d Cir.1985).

The public policy under consideration must be clearly defined and dominant. *W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183. It may be adduced from statutes, precedent, long governmental practice and obvious ethical or moral standards. *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945). Nor are the "clear dictates of common sense" to be ignored. *U.S. Postal Service v. American Postal Workers Union*, 736 F.2d 822, 825 (1st Cir.1984).

But the Union argues that the arbitrator's award does not conflict with public policy because it does not require or compel any violation of state or federal law. In short, there is no prohibition against re-instating an employee who retaliated against his superior with physical damages to property.

■ In the present case there is an indisputable public policy against permitting an

employee to direct physical violence at a superior, and an equally compelling policy against forcing that superior to again employ the man. The common weal also demands that individuals employ the dispute resolution mechanisms created to address wrongs both real and perceived rather than resort to the anarchy of intimidation and revenge.

We have previously upheld arbitrators' decisions in the face of public policy challenges. E.g. *Kane Gas Light & Heating Co. v. International Brotherhood of Firemen and Oilers, Local 112,* slip opinion (W.D.Pa., 12/19/80) aff'd, 687 F.2d 673 (3d Cir.1982). However, nothing approaches the extreme facts of this case. For example, in *Kane Gas* the arbitrator concluded that the employee was merely negligent or reckless. Here there is no dispute that plaintiff acted intentionally to retaliate against his superior with violence. See also, *U.S. Postal Service v. American Postal Workers Union,* 736 F.2d 822 (1st Cir.1984).

■ We also conclude that the arbitrator utterly ignored the facts and the contract in deciding to reinstate Jackson. As the Circuit instructs us in *Kane Gas:*

> An arbitrator's decision should be vacated when the arbitrator finds facts that constitute grounds for discharge under the collective bargaining agreement, but, in disregard of the agreement, refuses to uphold the discharge."

*Id.* 687 F.2d at 680, citing *International Brotherhood of Firemen & Oilers, Local No. 935–B v. The Nestle Co.,* 630 F.2d 474, (6th Cir.1980); *International Union of Operating Engineers, Local No. 670 v. Kerr-McGee Refining Corp.,* 618 F.2d 657 (10th Cir.1980). Here the company's Labor Relations Manual and the collective bargaining agreement give the company the power to discharge for "just cause", including insubordination and the commission of a crime. Although discipline is subject to arbitration under the agreement and although the arbitrator found certain facts which were, in his view, mitigating factors, we find it hard to envision any scenario under which the employer would be enti-

tled to exercise the power to discharge if it cannot do so in this case. Jackson's act and its impact on his employment relationship are so extreme that the arbitrator could only justify reinstatement by ignoring the undisputed facts and his own findings.

For the reasons stated we conclude that the arbitrator's awards violates public policy and is contrary to the terms of the labor agreement and the arbitrator's own findings. The reinstatement award will therefore be vacated.

■ The employer also challenges the arbitrator's conclusion that the immediate suspension was improper. Although we believe the arbitrator's factual conclusions are erroneous we can see no basis for vacating this portion of the award. However, the arbitrator's computation of the back pay period is clearly erroneous because Jackson was only suspended without pay for 14 days and then placed on administrative suspension *with* pay. An award which results in double recovery is plainly insupportable and we will vacate the arbitrator's award of back pay to the extent it requires pay for any period other than the initial suspension without pay.