**UNITED STATES POSTAL SERVICE,**

v.

**NATIONAL ASSOCIATION OF LETTER CARRIERS, A.F.L.–C.I.O.,**
Appellant.

No. 87–3501.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Jan. 22, 1988.

Decided Feb. 5, 1988.

Keith E. Secular, John S. Bishop, Cohen, Weiss and Simon, New York City, Stanley W. Greenfield, Greenfield & Associates, Pittsburgh, Pa., for appellant, National Ass'n of Letter Carriers, AFL–CIO.

J. Alan Johnson, U.S. Atty., Albert W. Schollaert, Asst. U.S. Atty., Pittsburgh, Pa., Jesse L. Butler, Asst. Gen. Counsel, Lori Joan Dym, Sr. Atty., Office of Labor Law, U.S. Postal Service, Washington, D.C., for appellee, U.S. Postal Service.

Before GIBBONS, Chief Judge, and WEIS and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

This is an appeal from a final order of the United States District Court for the Western District of Pennsylvania vacating an arbitration award as a violation of public policy. The district court's decision, 663 F.Supp. 118, was based on cross-motions for summary judgment and no material facts are in dispute. Accordingly, our review is plenary. The question presented for review is whether the district court exceeded its limited authority of review in vacating an arbitrator's award, entered pursuant to a collective-bargaining agreement, that reduced an employee's penalty for off-duty violent misconduct from discharge to suspension without pay, and awarded the employee backpay. We conclude that the recent unanimous Supreme Court decision in *United Paperworks Int'l v. Misco,* —— U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), reversing an appellate court ruling that affirmed the vacation of an arbitrator's award under a collective-bargaining agreement on public policy grounds, is controlling. Therefore, the district court's judgment will be reversed.

## I.

The arbitration award under review was rendered under a collective-bargaining agreement ("the Agreement") between the United States Postal Service ("the Postal Service"), an independent federal agency, and the National Association of Letter Carriers, AFL–CIO ("NALC"), the labor organization which represents the nationwide bargaining unit of all postal employees. Article 15 of the Agreement provides a multi-step grievance procedure culminating in binding arbitration before a neutral arbitrator selected from an established panel of postal service employees. The grievant is a postal employee, Edward Jackson. The Postal Service suspended and discharged Mr. Jackson pursuant to Article 16 of the Agreement which sets forth a "just cause" standard for discharge, and subjects all forms of discipline to the grievance-arbitration procedure in Article 15.

In July 1986, an arbitration hearing was held before arbitrator William J. LeWinter. The arbitrator found that the Postal Service had taken disciplinary action against Mr. Jackson because, while off-duty, he had fired gun shots at his Postmaster's empty parked car, damaging the windshield, dashboard and front seat—an incident to which Mr. Jackson voluntarily confessed. In evaluating whether the forms of disciplinary action taken against Mr. Jackson violated Article 16 of the agreement, arbitrator LeWinter concluded that, although Mr. Jackson's "serious act" warranted some disciplinary action, other facts indicated that the Article 16 "just cause" standard for discharge was not met. In particular, arbitrator LeWinter found that the Postal Service management had failed to take into account the following mitigating circumstances that ought properly to have been considered—specifically:

During his thirteen years of work prior to the offense, Mr. Jackson demonstrated a pacific, nonviolent and law-abiding character;

Mr. Jackson had been repeatedly frustrated in his efforts to gain a promotion notwithstanding his consistently good work record and the fact that he was the sole

office employee to receive an "excellent" rating on a Postal Service examination designed to identify candidates for promotion;

Mr. Jackson filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on this basis alleging that he was being discriminated against because he was black;

Mr. Jackson voluntarily withdrew his EEOC complaint as part of an agreement, arrived at in a meeting among him, his EEOC counselor, and the Postmaster, that he would be afforded the opportunity to advance to the "204–B" job category, and to have regular discussions with the Postmaster regarding application for promotions to other specific job categories, on condition of improvement in his work performance;

On the morning before the offense occurred, another meeting was held among Jackson, his EEOC counselor, and the Postmaster to discuss the fact that, after over a year, Jackson had still not been promoted to any of the job categories mentioned in the agreement, during which the Postmaster stated that, due to budget constraints and Jackson's attitude, Jackson would not be promoted.

Arbitrator LeWinter concluded from these findings of fact that the "supercharged emotional atmosphere," created by these background events, was responsible for Mr. Jackson's violent outburst. Weighing the single offense against Jackson's "13 year deposit in the 'bank of good will'," arbitrator LeWinter determined that Article 16, under which penalties are intended not to be punitive and discharge must be for "just cause," required a lesser penalty than discharge. Accordingly, he directed that Jackson be reinstated. The arbitrator further ruled that Jackson's suspension without pay violated section 7 of Article 16, which authorizes suspension only if employment may result in damage or injury, because the Postal Service's decision to suspend was made eleven days after the offense, during which time Mr. Jackson had demonstrated no propensity to violence. On this basis, arbitrator LeWinter awarded Mr. Jackson backpay from the

effective date of his suspension to the date of his removal.

Following the issuance of the arbitration award, the Postal Service refused to reinstate Mr. Jackson, and filed this action to vacate the award in the district court.

## II.

The district court based its decision to grant the Postal Service's motion for summary judgment on its action to vacate the arbitration award on the "public policy" exception to the court's usual deference to the judgment of arbitrators pursuant to collective-bargaining agreements. The district court relied primarily on the articulation of the public policy exception in *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), which states that to warrant vacation, an arbitration award must be shown to conflict with a public policy that is "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests'." *Id.* at 766, 103 S.Ct. at 2183 (quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)).

In three steps, the district court reasoned that arbitrator LeWinter's award contravened public policy. First, the district court asserted that "there is an indisputable public policy against permitting an employee to direct physical violence at a superior, and an equally compelling policy against forcing that superior to again employ the man." *United States Postal Service v. National Association of Letter Carriers, AFL–CIO*, 663 F.Supp. 118, at 119–20 (W.D.Pa.1987) [hereinafter "USPC"]. Second, the district court concluded that the arbitrator misconstrued the meaning of the "just cause" standard in the collective bargaining agreement on the ground that: "we find it hard to envision any scenario under which the employer would be entitled to exercise the power to discharge if it cannot do so in this case." *USPC, supra* at 120. Third, the district court determined that the arbitrator ignored relevant facts in arriving at his decision that there was no just cause for discharge. *Ibid.*

## III.

After the district court issued its decision, the Supreme Court handed down *United Paperworkers International Union, AFL–CIO v. Misco,* —— U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) [hereinafter *"Misco"*], a decision further clarifying the limits of the scope of review of arbitration awards rendered under collective bargaining agreements. While affirming the basic power of courts to refuse to enforce contracts that violate law or public policy, *Misco, supra* at ——, 108 S.Ct. at 373 (citing *W.R. Grace, supra* 461 U.S. at 766, 103 S.Ct. at 2183; *Hurd v. Hodge*, 334 U.S. 24, 34–35, 68 S.Ct. 847, 852–53, 92 L.Ed. 1187 (1948)), the Court in *Misco* delimited the methods by which a public policy and its contravention are to be ascertained. *Misco* specifically rejected, as exceeding the court's reviewing authority, techniques employed by a district court in: (1) asserting a public policy without substantiating its existence within existing laws and legal precedents, and thereby failing to distinguish its pedigree as a "well defined and dominant" policy as opposed to a "general consideration of supposed public interests," *Misco, supra* —— U.S. at ——, 108 S.Ct. at 373 (quoting *W.R. Grace, supra* 461 U.S. at 766, 103 S.Ct. at 2183); (2) second-guessing the arbitrator's fact-finding, particularly insofar as the conclusion that the asserted public policy would be violated by the employee's reinstatement depends on drawing factual inferences not made by the arbitrator, *Misco, supra* at ——–——, 108 S.Ct. at 373–374; (3) second-guessing the arbitrator's reasonable construction of the "just cause" clause, and of the rules of evidence and procedure appropriate to a "just cause" determination, under the collective-bargaining agreement. *Misco, supra* at ——, 108 S.Ct. at 371. *Cf. Misco, supra* at ——, 108 S.Ct. at 375 (Blackmun, J., concurring) (summarizing the three alternative rationales for the Court's decision as (1) "considering evidence that the arbitrator legitimately ex-

cluded from the grievance process, in second-guessing the arbitrator's factual finding ... and in assessing the appropriate sanction under the agreement"; (2) advancing a public policy which does not require the substitution of the district court's remedy for that of the arbitrator for its achievement; (3) formulating the public policy on the basis of "general considerations of supposed public interests," rather than ascertaining its "explicit" formulation from existing laws or legal precedents).

Like the case before us, *Misco* involved the review of an arbitration award, rendered under a collective-bargaining agreement, upholding an employee's grievance against being discharged for lack of "just cause," and awarding reinstatement and back pay. The employee in *Misco*, a machine operator, was discharged by his company for violating the company rule against having drugs on the plant premises. *Id.* at ——, 108 S.Ct. at 368–69. The arbitrator there found no just cause for the discharge on the ground that the evidence —that the employee was found in the backseat of a car, not his own, parked on company premises with a lit marijuana cigarette in the front-seat ashtray—was not sufficient to prove that the employee personally used or possessed drugs in violation of the company rule. The arbitrator refused to accept into evidence the fact that marijuana had also been found in the employee's own car while parked on company premises because that fact was not known to, or relied on by, the employer at the time of the discharge. *Id.* at ——, 108 S.Ct. at 368–69. The reviewing courts, by contrast, relied on the latter fact, excluded by the arbitrator, as establishing just cause for discharge, i.e., the violation of the company rule against drugs. The appellate court enunciated a public policy against the operation of dangerous machinery by persons under the influence of drugs as the ground for the non-enforcement of the arbitration award of reinstatement.

Similarly, the district court in the instant case questioned the arbitrator's consideration of the evidence in interpreting the just cause provision of the Agreement. However, as the Supreme Court reiterated in

*Misco*, in collective-bargaining agreements it is the arbitrator's judgment "and all that it connotes that was bargained for." *Misco, supra* at ——, 108 S.Ct. at 370 (quoting *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960)). Part of what the arbitrator's judgment connotes is "the arbitrator's view of the facts and of the meaning of the contract that [the parties] have agreed to accept." *Misco, supra* —— U.S. at ——, 108 S.Ct. at 370. Therefore, "a court may not reject [an arbitrator's] findings simply because it disagrees with them," nor may it "reject an award on the ground that the arbitrator misread the contract." *Id.* at ——, 108 S.Ct. at 371. For the same reason, "where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Id.* at ——, 108 S.Ct. at 371. Courts, therefore, are prohibited from second-guessing the arbitrator's fact-finding and contract interpretation "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," rather than simply applying his own brand of industrial justice. *Id.* at ——, 108 S.Ct. at 371.

■ Applying the *Misco* standard of review to the district court decision, we conclude that the district court exceeded the scope of its reviewing authority. Even assuming, arguendo, that there is a public policy against permitting an employee to direct physical violence against a superior, the district court erred in setting aside the arbitrator's order of reinstatement. A judgment about the offending employee's "amenability to discipline" comes under the scope of the arbitrator's factfinding authority, *Misco* at ——, 108 S.Ct. at 374, and in this case, arbitrator LeWinter determined in the scope of his authority that the facts indicated that upon return to work Mr. Jackson showed no proclivity to further aggression. Therefore, a policy in favor of protecting co-workers and customers from Mr. Jackson's violent conduct (assuming, *arguendo*, that such a policy is properly

ascertained) does not *require* his discharge for its fulfillment.

█ The rest of the district court's argument is based on the assumption that the asserted public policy does require Jackson's discharge for its fulfillment. Thus, the district court inferred that arbitrator LeWinter must have misconstrued "just cause" and ignored facts from the proposition that just cause for discharge would never obtain if not in this case. That inference, however, depends on the faulty assumption that Jackson's discharge was required in this case. We have concluded that Jackson's discharge was not required by law or public policy, and, therefore, we are not warranted in rejecting LeWinter's application of the just cause standard on public policy grounds.

### IV.

Both parties have urged us to reach the question of how narrow the limits of the scope of review of a collective-bargaining arbitration decision are. Thus, NALC urges us to hold, as a basis for reversal, that courts have authority to refuse to enforce an arbitration award only when enforcement would violate positive law or require unlawful conduct. Conversely, the Postal Service argues that a court's reviewing authority under the public policy exception to the enforcement of contracts is broader than that. We do not, however, need to reach this question of where lies the precise boundary around our reviewing authority because, under *Misco*, the district court has clearly exceeded it.

### V.

█ As an alternative ground for upholding the district court decision, the Postal Service has urged us to consider, as a basis for enlarging our reviewing authority, the fact that it is a public employer, unlike the private employer involved in *Misco*. We see no basis for distinguishing between the postal service and the private sector with regard to the scope of judicial review of arbitration conducted under collective-bargaining agreements. The intent of the Postal Reorganization Act, 39 U.S.C. §§ 101–5605, was to extend to the postal service the general labor relations framework of collective-bargaining and binding arbitration established under the National Labor Relations Act, 29 U.S.C. §§ 151–169. Therefore, the framework of grievance procedures established under the postal service collective-bargaining agreement is subject to the same general federal policies that counsel against a broad scope of judicial review of collective-bargaining arrangements in the private sector. As the Supreme Court stated, there is "a decided preference for private settlement of labor disputes without the intervention of government ..." *Misco* at ——, 108 S.Ct. at 370. "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Misco, supra* at ——, 108 S.Ct. at 370 (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960)). "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Id.* at ——, 108 S.Ct. at 370. These policies are no less apposite in the context of labor relations in the postal service than in the private sector. Moreover, there is no indication of any statutory intent to remove the postal service collective-bargaining framework from general federal labor relations law and policy. Therefore, we conclude that there is no basis for enlarging the scope of review of arbitration awards in the postal service context.

### VI.

We conclude that under *United Paperworkers International Union, AFL–CIO v. Misco*, —— U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286, the district court erred in second-guessing the arbitrator's fact-finding and construction of the "just cause" standard for discharge under the collective-bargaining agreement. Accordingly, the judgment appealed from will be reversed and

the case remanded for the entry of an order enforcing the arbitrator's award.