**EZ COMMUNICATIONS, INC., WBZZ–FM, Plaintiff,**

v.

**AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, Defendant.**

**Civ. A. No. 88–2636.**

United States District Court, W.D. Pennsylvania.

Oct. 16, 1989.

---

Stephen H. Jordan, Foster S. Goldman, Jr., for plaintiff.

Samuel P. Kamin, for defendant.

## OPINION

ZIEGLER, District Judge.

EZ Communication, Inc., WBZZ–FM brings this action pursuant to Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185, to vacate the award of an arbitrator that granted severance pay to Elizabeth Randolph, a former news director at WBZZ–FM, the radio station owned and operated by EZ Communications. *See* Plaintiff's Exhibit E. The American Federation of Television and Radio Artists, a labor organization and party to a collective bargaining agreement with EZ Communications, represented Randolph in her claim for severance pay.

Randolph was employed by plaintiff as a news director for WBZZ–FM from 1985 until January, 1988. Her duties included reading the news twice during each hour of "The Quinn and Banana Show," a morning radio show featuring disc jockeys and local radio personalities, Jim Quinn and "Banana" Don Jefferson. It is common practice for disc jockeys to engage in humorous exchanges with various reporters on the shows and Quinn and Banana often joked with Randolph while on the air. However, in 1986, Quinn and Banana began to recite tasteless, sexual quips about Randolph on the air while she was on vacation. The statements suggested that Randolph was sexually promiscuous and that she had sexually transmitted diseases, albeit in a joking manner.

As a result of the outrageous jokes directed at her, Randolph experienced anxiety attacks, difficulties in functioning on the air and working with Quinn and Banana in general. She was eventually admitted to a hospital due to the emotional trauma she suffered as a result of the ridicule. Thereafter, the on-the-air joking included jokes concerning Randolph's mental status, suggesting that she was instable, in addition to suggestions that she was sexually indiscriminate.

Attempts by Randolph to bring this shoddy treatment to an end by discussing her displeasure with superiors at the station were ineffective. Finally, on January 22, 1988, during the "Friday Morning Joke–Off" segment of the "Quinn and Banana Show," a disc jockey from a sister station to WBZZ–FM in St. Louis, Missouri, called the station on the air and made Randolph the butt of his joke, which referred to oral sexual activity in an offensive manner. The joke was played back for Randolph by Quinn or Banana just before she was to do a news report on their show. Randolph became too distraught to perform and left the station.

Later that day, Randolph returned to the station to resume her news duties, but she was placed on leave of absence pending an investigation. One week later, Randolph's employment was terminated for flagrant neglect of duty related to her sudden departure from the station on January 22, 1988. As a result of her termination for what plaintiff alleges to be just cause under the collective bargaining agreement,

plaintiff denied the claim of Randolph for severance pay.

Presently before the court are the cross motions of the parties for summary judgment. EZ Communications contends that the arbitrator exceeded his authority in numerous respects. Defendant disagrees. In keeping with well established principles of federal labor law, the arbitrator's award must be sustained so long as it "draws its essence from the collective bargaining agreement." *Graphic Arts International Union v. Haddon Craftsmen,* 796 F.2d 692, 694 (3d Cir.1986).

The arbitrator interpreted the relevant portions of the collective bargaining agreement as an agreement by the employer to pay announcers severance pay unless the employee is guilty of "flagrant neglect of duty, drunkenness, dishonesty or other serious cause." Plaintiff's Exhibit E at 10; Plaintiff's Exhibit A, Schedule 1, B. Staff Working Conditions at ¶ 7.

EZ Communications does not dispute the interpretation of the agreement in this regard. Rather, plaintiff asserts that Randolph is not entitled to severance pay because the act of leaving the premises of WBZZ–FM on January 22, 1988, without performing newscasts, constituted a flagrant neglect of her duties and that, if she felt that she was being subjected to sexual harassment on the job, she was required to file a formal grievance rather than resort to self help by walking off the job.

The arbitrator disagreed with plaintiffs' characterization of Randolph's conduct on January 22, 1988, for which she was terminated. He found that "... the vile and filthy joke perpetrated upon the grievant on January 22, 1988, was, in fact, the straw that broke the camel's back." Plaintiff's Exhibit E at 13. The arbitrator further found that the employer was aware or at least strongly suspected that Randolph was offended by the on-air jokes made by Quinn and Banana at her expense. Plaintiff's Exhibit E at 14. The arbitrator concluded that "... the grievant's action of walking off the job was not only understandable, but more importantly, was justifiable ... I would find it unreasonable to require the grievant to have remained on the job after being subjected to such vile and lewd insults and be expected merely to file a grievance." Plaintiff's Exhibit E at 13.

An arbitrator exceeds his authority whenever he substitutes his own notions of industrial justice for the terms of the parties' agreement. *Pennsylvania Power Company v. Local Union #272 of the International Brotherhood of Electrical Workers, AFL–CIO,* 886 F.2d 46 (3d Cir. 1989). In our view, the arbitrator had authority bottomed in the bargaining agreement to find that the act of walking off the job was neither a flagrant neglect of Randolph's employment duties nor was she required to file a formal grievance to protest the degradation to which she was exposed as a result of the insensitivity of other employees of plaintiff.

The Supreme Court has defined our meager authority to review the award of the arbitrator, under the circumstances:

> Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.

*United Paperworkers International Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

While EZ Communications argues that the arbitrator exceeded his authority in issuing the award, we find that plaintiff is in fact seeking a review of the merits of the award which was based on a reasonable interpretation of the contract. *Id.* at 36, 108 S.Ct. at 369–70. The arbitrator properly interpreted the contract and applied that

interpretation to the facts presented. If we were to second guess his reasonable construction, we would exceed our authority and scope of review. *Id.; See also United States Postal Service v. National Association of Letter Carriers,* 839 F.2d 146 (3d Cir.1988). The motion of plaintiff for summary judgment will be denied, and defendant's motion will be granted.