**STEAD MOTORS OF WALNUT CREEK, Plaintiff–Appellee,**

v.

**AUTOMOTIVE MACHINISTS LODGE NO. 1173, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Defendant–Appellant.**

No. 87–2053.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 11, 1988.[*]

Decided March 30, 1988.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for defendant-appellant.

J. Mark Montobbio, Severson, Werson, Berke & Melchior, San Francisco, Cal., for plaintiff-appellee.

Before WRIGHT, CHOY and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

This case involves the narrow but important issue of the kind of public policy that justifies a federal court in overturning an arbitrator's award. In 1977 Gale Rocks went to work as a mechanic for Stead Motors, a Mercedez–Benz dealership in Walnut Creek, California. On October 12, 1984 Rocks received a written warning that after installing a left rear tire, he had improperly tightened the lug bolts attaching the wheel to the car, with the result that the left rear wheel almost came off while the owner was driving at highway speed in San Francisco. In September of

---

[*] The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

the following year Rocks got into an argument with a shop foreman about the right way of tightening lug bolts after tires were put back on a car. He was subsequently told by the company that he could not disregard directions from the foreman and must mount and tighten the wheels as instructed. On October 14 of the same year, Rocks replaced brake pads on the car of a customer. The customer reported a very heavy vibration in the front of the car as he drove home. An employee from the company checked out the car and found three lug bolts were loose on the right front wheel and four lug bolts on the left front wheel were loose and the fifth was missing. Rocks was the only person who had worked on the car.

The collective bargaining agreement in force between the new car dealers of Contra Costa County and the union provided that the employer might discharge employees for "just cause" and that no prior notice was necessary if the cause was "recklessness." On October 15, 1985 Rocks was fired for his recklessness in replacing the lug bolts on October 14.

Pursuant to provisions of the collective bargaining agreement, the union filed a grievance on behalf of Rocks. The collective bargaining agreement, section 33.05, then called for adjudication by a board made up of union and management representatives. Instead of following this procedure, the union and employer apparently agreed to by-pass it and to submit the matter to an arbitrator, Robert LeProhn. Although LeProhn's opinion asserts that he was named pursuant to the collective bargaining agreement, the agreement itself does not authorize the procedure adopted.

LeProhn found that Rocks had failed to tighten the lug bolts on October 14, 1985; that his failure "constituted recklessness which warranted discipline pursuant to Section 5.02 of the Agreement;" and that he was discharged for this reason. LeProhn found that Rocks was not fired for any union activity. LeProhn concluded that Rocks' conduct warranted "severe discipline." But in his view "discipline is aimed at rehabilitation." Discharge was "too severe." Suspension for 120 days would suffice.

The arbitrator's award was handed down on November 3, 1986. As it required reinstatement of Rocks after the 120 days suspension was over, he became entitled to back pay for a large part of 1986 when he had not worked for Stead Motors and of course to the opportunity of going back to being a mechanic tightening bolts on Mercedes Benzes in Contra Costa County.

Stead Motors brought suit to vacate the award. The suit was removed by the union to the federal district court. The court, holding the award to be against public policy, modified it by vacating that portion of the award that reinstated Rocks and gave him back pay. The union appealed.

■ The power of a federal court to vacate a labor arbitrator's award is narrow. Even though LeProhn does not appear to have been appointed arbitrator in conformity with the collective bargaining agreement, we analogize his position to that of an arbitrator appointed under such an agreement. Strong federal policy dictates that such an arbitrator's award should be final, and that courts should not second guess him on remedies. *United Paperworkers v. Misco,* —— U.S. ——, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987). Nonetheless, there is at least one exception to the general rule: where an arbitrator's judgment is contrary to "well defined and dominant" public policy, the judgment must be vacated. *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers,* 461 U.S. 757, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) (quoting *Muschany v. United States,* 324 U.S. 49, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)).

■ In *Misco,* the Supreme Court noted that this exception is to be narrowly construed; vague and general considerations of public policy as found by a court should not override an arbitrator's judgment. *Misco,* 108 S.Ct. at 374. Applying the exception, the Eighth Circuit vacated an arbitrator's reinstatement award after concluding that the award was contrary to public policy regarding nuclear safety. *Iowa Elec. Light & Power v. Local Union 204,* 834 F.2d 1424, 1427 (8th Cir.1987). In this case the same exception applies. The arbi-

trator showed "a manifest disregard" for the law of the state. *See Bevles Co. v. Teamster Local 986*, 791 F.2d 1391, 1392 (9th Cir.1986).

There exists in California a "well defined and dominant" public policy regarding automobile safety and maintenance. California Vehicle Code § 24002 provides:

It is unlawful to operate any vehicle or combination of vehicles which is in an unsafe condition....

There is, the Supreme Court of California has said, "express legislative recognition of the fact that improperly maintained motor vehicles threaten 'a grave risk of serious bodily harm or death.'" *Maloney v. Rath*, 69 Cal.2d 442, 448, 71 Cal.Rptr. 897, 900, 445 P.2d 513, 516 (1968) (Traynor, C.J.), quoting Restatement (Second) of Torts § 423.

To minimize the risk of improper maintenance, the legislature established the California Bureau of Automotive Repair in 1971. Cal.Bus. & Prof.Code § 9882. The Bureau is authorized to "inquire into the practice and policies of the automotive repair industries ... and make such recommendations with respect to such policies, practices and functions as may be deemed important and necessary by the Bureau for the welfare of the consuming public and the automotive repair industry." *Id.* at § 9882.13. The Bureau is further authorized to establish general motor vehicle repair standards, rules for the certification of repair facilities (including mechanics' qualifications), and an on-site inspection program to insure compliance with the standards of certification. *Id.* at § 9889.33, § 9889.39. The Bureau's rules and regulations are codified in Cal.Admin.Code, Title 16, §§ 3300, et seq.

No one may be an automobile repair-dealer in California unless registered in accordance with law by the Bureau. *Id.* at § 9884.6. The Bureau may invalidate registration if it finds that the dealer or any employee of the dealer has been guilty of gross negligence. *Id.* § 9884.7. Stead Motors could not have kept Rocks and stayed in business. *Id.* § 9884.6. The encouragement of arbitration, reduction of the caseload of the federal courts, and facilitation of the resolution of labor-management disputes are all objectives that must yield to the paramount public policy expressed by California in its concern for safety on its roads.

Discharge sometimes has severe economic consequences for the discharged employee. Discharge is not capital punishment. To employ or rehire a reckless auto mechanic does risk capital punishment of the driver of the car being serviced—and not only for the driver but for his passengers and for other motorists or pedestrians in the way when a front wheel falls off. Reinstatement of the reckless mechanic creates the grave risk the legislature has emphatically disapproved. It is directly and substantially contrary to the express public policy of the state.

AFFIRMED.