**CHRYSLER MOTORS CORPORATION, Plaintiff,**

v.

**INTERNATIONAL UNION, ALLIED IN-DUSTRIAL WORKERS OF AMERICA, AFL–CIO, and Local 793, Defendants.**

No. 89–C–999.

United States District Court, E.D. Wisconsin.

Jan. 26, 1990.

Ely A. Leichtling, Gregory S. Muzingro, Kenneth C. Hortop, Quarles & Brady, Milwaukee, Wis., for plaintiff.

Kenneth Loebel, Habush, Habush & Davis Milwaukee, Wis., for defendants.

## OPINION AND ORDER

CURRAN, District Judge.

■ Chrysler Motors Corporation (CMC) has commenced the above-captioned case against the International Union, Allied Industrial Workers of America, AFL–CIO, and Local 793 (the Unions) seeking an order vacating an arbitrator's award issued on July 24, 1989, because it is contrary to public policy. The defendant Unions have answered by denying that the award should be vacated and by asserting a counterclaim seeking enforcement of the award, prejudgment interest on all monies found owing to the grievant,[1] costs and attorney fees. The court has jurisdiction[2] over the

---

1. In their Counterclaim the Unions ask for "postjudgment" interest. They have attempted to change this to "prejudgment" interest in their brief. *See* Answer and Counterclaim at 6; Memorandum in Support of Defendants' Motion for Summary Judgment to Have Plaintiff's Complaint Dismissed and to Provide the Relief as Sought by Defendants in Its Counterclaim at 2 n. 2.

2. In general, an arbitrator's award must be final and binding before judicial review can be undertaken. *See Millmen Local 550, United Brotherhood of Carpenters and Joiners of America, AFL–CIO v. Wells Exterior Trim,* 828 F.2d 1373, 1375 (9th Cir.1987). To be considered "final," an arbitration award must be intended by the arbitrator to be his complete determination of every issue submitted to him. *Anderson v. Nor-*

subject matter of the plaintiff's claims and the defendants' counterclaims in that this is a civil action arising under an Act of Congress regulating commerce. *See* 28 U.S.C. § 1337(a). The Act in this case is section 301(a) of the Labor Management Relations Act of 1947 which provides that:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Shortly after the plaintiff filed a reply asking that the counterclaim be dismissed, the parties filed cross motions for summary judgment which are now fully briefed and ready for decision. Each side maintains that no material facts are in dispute and that it is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56.

## I. FACTS

CMC is a corporation which, among other things, operates a marine and industrial products manufacturing facility in Beaver Dam, Wisconsin. The Unions are the exclusive collective bargaining representatives of certain CMC employees at the Beaver Dam facility, including Ronald Gallenbeck, the grievant in the underlying arbi-

tration proceeding. The parties in this case have entered into a collective bargaining agreement which is effective from July 1, 1986, through June 30, 1991.

On October 27, 1987, while this agreement was in effect, CMC hired Gallenbeck as a fork lift operator. After a female employee at the Beaver Dam facility complained that Gallenbeck had sexually assaulted her, CMC suspended, then promptly fired, Gallenbeck on January 10, 1989, for what the company believed to be "proper cause" as provided in Article IX of the collective bargaining agreement. *See* Complaint at Exhibit A, Article IX. The Unions filed a grievance protesting the discharge and the matter proceeded to arbitration on June 16, 1989. *See Id.* at Exhibit A at Article III, Section 3.02.[3] In his decision of July 24, 1989, the arbitrator, Jay E. Grenig, found that the following events occurred:

> The Grievant began work with the Employer at its Beaver Dam Marine and Industrial Products facility on October 27, 1987, as a Fork Lift Operator Trainee. He was discharged effective January 10, 1989. The notice of termination stated, in pertinent part, as follows:
>
> > On Monday, January 9, 1989, [B], a contract employee of Boyd–Hunter, Inc., assigned to the Chrysler Marine Corporation Warehouse, advised [the Production Control Manager] that she was sexually assaulted by [the Grievant], who approached [B] from behind, reached around her body and fondled

*folk and Western Railway Company,* 773 F.2d 880, 883 (7th Cir.1985).

In this case the arbitrator concluded his award by stating that:

> In the event there is a dispute with respect to computation of the remedy, the Arbitrator retains jurisdiction for a period of 60 days from the date of this award to hear and determine that issue only.

Complaint at Exhibit B, p. 22. The Unions did not contest jurisdiction and apparently the computation issue was never submitted to the arbitrator. Therefore, the court will assume that the award was final and that it has jurisdiction to review the award. *See United Steelworkers v. Enterprise Wheel & Car Corporation,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960) (arbitration need not complete the mathematical computations of the award for the award to be final and reviewable).

**3.** The collective bargaining agreement provides that at Step 5 of the grievance procedure:

> The Corporation and the Union shall choose an arbitrator. However, should no agreement be reached in the selection of an arbitrator, the Corporation and the Union agree to request the Federal Mediation and Conciliation Service to provide an arbitrator. The decision of the arbitrator shall be final and binding on all parties. The arbitrator shall have authority only to decide questions as to the meaning and application of the terms of this Agreement, and such arbitrator shall have no authority to change existing rate ranges, incentive base rates or day work rates, for any labor grade or to add, delete or modify any of the terms of this Agreement.

Complaint at Exhibit A, Section 3.02.

her breasts. [B] also advised [C] of Boyd–Hunter, Inc., of the incident, stating she would file criminal charges if [Grievant] was not removed from the warehouse.

At the time of his discharge, the Grievant was a Group Leader working in a warehouse approximately six miles from the Beaver Dam facility. B was employed by Boyd/Hunter Employment Agency, which had an inspection contract with one of the Employer's suppliers. B also worked at the warehouse.

The Grievant was at work on January 5, 1989, when he received a telephone call. During the course of his telephone conversation, he put the telephone receiver on the desk and walked over to B, while B was inspecting door trim panels for defects. While she was inspecting a door panel, the Grievant came up behind her, reached under her extended arms, grabbed her breasts, and squeezed them. B screamed and the Grievant returned to the telephone, where he stated, "Yup, they're real."

B contacted an attorney regarding the incident that night. She reported the incident to the Boyd/Hunter's manager the next morning. When the Employer learned of the incident on Monday, January 9, the Grievant's supervisor and the Union president went to the warehouse. They spoke with the Grievant, who admitted to having grabbed B's breasts.

The supervisor informed the Personnel Manager of Grievant's admission and the Grievant was suspended from work. The situation was discussed with the Employer's legal staff in Detroit and the suspension was converted to a discharge effect [sic] January 10, 1989.

On January 12, 1989, the Grievant filed a grievance, stating, in pertinent part, as follows:

> The Aggrieved feels that retaliation has occurred stemming form [sic] the Alleged allegations. The Co. dismissal of the aggrieved was to [sic] severe. The Co. should fully consider the time of service and over all work performance of the aggrieved.

The grievance asked for the following remedy: "Full reinstatement with full backpay and all alleged allegations removed from his record."

The grievance was denied and the issue submitted for resolution in this arbitration proceeding.

B testified at the arbitration hearing that the Grievant had grabbed her before. She testified that when she came out of the break room, he'd grab her on the "hinder" and pinch her "hinder." She said that he'd "done it to other girls." B stated that she had reported the incidents to the manager at Boyd/Hunter.

The Boyd/Hunter group leader at the warehouse testified that there had been at least one other incident of the Grievant grabbing a female co-worker. He said that the co-worker never complained to his knowledge.

During the Grievant's employment with the Employer, he never received any discipline and he never missed a day of work. During this period he frequently worked six or seven days a week and ten-hour days.

The Union president testified at the hearing that sometime in December 1988 B told him that she was going to do whatever she had to do to get rid of "that son of a bitch"—meaning the Grievant.

Employer witnesses testified that the Grievant had engaged in conduct similar to that with which he is charged here in the past, although he had never been disciplined for the conduct.

The Employer's Production Control Manager testified that the Employer utilizes a corrective or progressive disciplinary system.

Complaint at Exhibit B, pp. 3–6.

In the arbitration proceeding CMC took the position that Gallenbeck's conduct constituted sexual harassment or sexual assault and battery; that this conduct furnished proper cause for discharge; that discharge has been upheld as the proper remedy for such conduct in most other cases; and that there were no mitigating circumstances warranting reinstatement.

The Unions, on the other hand, characterized the conduct as "horseplay" and argued that "there is a distinction between someone who acts out of a misguided and no longer acceptable so-called sense of humor and someone who really seeks sexual gratification." *Id.* at Exhibit B, p. 7. Pointing out that the company had a progressive disciplinary policy and that the company knew of no other similar incidents when it fired Gallenbeck, the Unions asked that the discharge be reduced to a suspension.

After hearing these arguments, the arbitrator began his decision by observing that:

Where the contract provides that an employee may be disciplined or discharged for just cause, proper cause, or good cause, the degree of disciple [sic] imposed must reasonably relate to the seriousness of the employee's proven offense and the record of the employee in his service with the Employer.

*Id.* at Exhibit B, pp. 8–9. The arbitrator reasoned that, while serious offenses such as stealing or striking a foreman usually justify summary discharge, less serious offenses call for a milder penalty. Based on these threshold considerations, the arbitrator framed the issue as follows: "There is no dispute with respect to whether the Grievant grabbed B's breasts. The only significant question is whether the penalty imposed by the Employer was appropriate under the circumstances." *Id.* at Exhibit B, pp. 11–12.

After reviewing numerous other arbitration decisions involving allegations of employee misconduct, the arbitrator pointed out that in most other cases where a discharge was upheld, the employee had been warned or previously disciplined for prior conduct. In contrast, CMC did not know of any other incidents of sexual assault by Gallenbeck before it fired him. Therefore, the arbitrator decided that the several incidents which came to light after Gallenbeck's discharge could not be considered in determining whether the discharge was for proper cause.

His review of other cases also persuaded the arbitrator that, while sexual harass-ment is a serious offense, it is not serious enough to justify discharge without prior warnings or attempts at corrective discipline.[4] The arbitrator found that CMC had such a system of progressive discipline and that "the evidence does not indicate that the Grievant could not be rehabilitated and correct his behavior. Although not a long-term employee, the Grievant had a blemish free disciplinary record prior to his discharge and was considered to be a good employee." Complaint at Exhibit B, p. 20. Based on these findings, the arbitrator decided that: "Because the penalty here was too severe under all the circumstances, it is concluded that there was not good cause to discharge the Grievant. However, there was good cause to suspend the Grievant for 30 workdays." *Id.* at Exhibit B, p. 21. The arbitrator then fashioned the following award:

Having considered all the relevant evidence and the arguments of the parties, it is concluded that the discharge of Ronald Gallenbeck on January 10, 1989, was not for good cause. However, there was good cause to suspend the Grievant for 30 workdays.

Accordingly, the Employer is directed to reduce the Grievant's discharge to a 30–workday suspension and to reinstate and otherwise make the Grievant whole for all lost benefits except for that period constituting the 30–workday suspension. The backpay is to be reduced by the Grievant's earnings since his discharge.

In the event there is a dispute with respect to computation of the remedy, the Arbitrator retains jurisdiction for a period of 60 days from the date of this award to hear and determine that issue only.

*Id.* at Exhibit B, pp. 21–22.

CMC now seeks to vacate this award on the ground that, as a matter of law, it contravenes public policy. The Unions seek to have the award enforced.

---

**4.** The arbitrator makes the dubious assertion that: "This is not to say that sexual harassment cannot be tolerated in the workplace." Complaint at Exhibit B, p. 20.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), a party moving for summary judgment must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *McGraw-Edison Company v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir.1986). When faced with a properly supported motion for summary judgment, the nonmovant may not avoid judgment by simply resting on its pleadings. If the nonmovant bears the burden of production on an issue at trial, it must affirmatively demonstrate, by specific showings, that there is a genuine issue of material fact requiring a trial. *See First National Bank of Cicero v. Lewco Securities Corporation*, 860 F.2d 1407, 1411 (7th Cir.1988).

■ A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A summary judgment procedure is not meant to be a trial on affidavits. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. At the summary judgment stage the judge's function is to determine whether there is sufficient evidence favoring the nonmoving party for that party to be entitled to judgment. *See First National Bank or Arizona v. Cities Service Company*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). This inquiry implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. Thus, in a civil case in which a bench trial has been requested, the record must show that the court could find by a preponderance of the evidence that the party upon whom the burden of proof is imposed is entitled to a judgment in its favor. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. If that party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted in favor of the opponent. *See Id.* at 249–50, 106 S.Ct. at 2510–11.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ Where, as here, the court is presented with cross motions for summary judgment, the court may fairly infer that no evidence other than the pleadings and supporting documents offered by the litigants need be considered in order to determine whether a genuine issue of material fact exists in the dispute. *See Williams v. Frank*, 702 F.Supp. 14, 16 (D.Mass.1988). The court must consider each party's motion separately. Each movant has the burden of presenting evidence to support its motion which would allow the court, if appropriate, to enter judgment in its favor with the evidence being viewed in the light most favorable to the party opposing the motion. *See Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir.1988).

## III. DECISION

### A. The Arbitration Award

■ Applying these standards to the case at hand, the court acknowledges at the outset that it must accept the arbitrator's factual findings and merit determinations and cannot supplement or correct them. *See Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*,

**1358**

International Association of Machinists and Aerospace Workers, 886 F.2d 1200, 1207 (9th Cir.1989) (en banc); Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, Local Union 540, 712 F.2d 122, 123 (5th Cir.1983). Therefore, there are no material issues of fact which can be disputed. Instead, the movants are asking the court to determine whether the arbitrator's award should be vacated or affirmed as a matter of law.

### 1. Standard of Review

The substantive law governing judicial review of an arbitrator's award is found in federal law developed pursuant to section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), which governs disputes arising under collective bargaining agreements. See Ludwig Honold Manufacturing Company v. Fletcher, 405 F.2d 1123, 1127 & n. 22 (3d Cir.1969). Under this law it is well-established that judicial scrutiny of an arbitrator's decision is extremely narrow. See Local 879, Allied Industrial Workers of America, AFL–CIO v. Chrysler Marine Corporation, 819 F.2d 786, 788 (7th Cir.1987).

■ In 1960, the United States Supreme Court set forth the standards for review in the Steelworkers Trilogy.[5] First, the Court emphasized that parties who have agreed to binding arbitration must expect to abide by their bargain and may not consider arbitration as merely a preliminary step to de novo judicial review. See Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). See also Local 879, Allied Industrial Workers of America, AFL–CIO v. Chrysler Marine Corporation, 819 F.2d at 788. Next, the Court explained that the collective bargaining agreement is "more than a contract" and that when a contract term is undefined, the arbitrator is the person designated to fill in the gaps with his expertise and knowledge of the "common law of the shop" and the "specialized

needs" of the parties. United Steelworkers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 578–82, 80 S.Ct. 1347, 1350–53, 4 L.Ed.2d 1409 (1960). Finally, in Enterprise Wheel, the Court stated that, in general, "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." United Steelworkers of America v. Enterprise Wheel & Car Corporation, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Consequently, an award may be overturned only if the arbitrator based his award on his own personal notions of right and wrong; if the arbitrator did not act within the confines of his jurisdiction; if the award does not draw its essence from the collective bargaining agreement; if the collective bargaining agreement is contrary to law; or if the contract, as interpreted by the arbitrator, would violate the law or any explicit, well-defined and dominant public policy. See W.R. Grace & Company v. Local 759, International Union of United Rubber, Cork, Linoleum & Plastic Workers of America, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983); Enterprise Wheel & Car Corporation, 363 U.S. at 597, 80 S.Ct. at 1361. If on its face the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. This remains so even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions. See Enterprise Wheel & Car Corporation, 363 U.S. at 597–99, 80 S.Ct. at 1361–62. See also George Day Construction Company v. United Brotherhood of Carpenters and Joiners of America, Local 354, 722 F.2d 1471, 1477 (9th Cir.1984).

### 2. Public Policy

■ CMC is moving to vacate the arbitrator's award on the ground that it violates public policy. Although the Supreme

---

**5.** The cases composing the Steelworkers Trilogy are: United Steelworkers of America v. Enterprise Wheel & Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Naviga-

tion Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

Court has held that the public policy doctrine is applicable to labor arbitration cases, in *United Paperworkers International Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), it cautioned against the broad application of the doctrine to invalidate a labor arbitrator's award. *See Id.* at 43, 108 S.Ct. at 373. When an arbitration award is challenged on public policy grounds, the court must first determine whether the arbitrator's interpretation of the contract jeopardizes a well-defined and dominant public policy, taking the facts as found by the arbitrator.[6] *See Board of County Commissioners of Lawrence County, Ohio v. L. Robert Kimball and Associates*, 860 F.2d 683, 686 (6th Cir.1988) (case brought under provisions of United States Arbitration Act); *Local Joint Executive Board of Las Vegas v. Riverboat Casino, Inc.*, 817 F.2d 524, 527 (9th Cir.1987). The Supreme Court has explained that, for purposes of the narrow public policy exception to affirming a labor arbitrator's award, the policy at issue must be "well defined" and "dominant" and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace & Company v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) (quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)). Once the policy is identified, the party seeking to have the award vacated must show that a sufficient link exists between enforcement of the award and the violation of the policy to warrant the refusal to confirm the award. *See Misco*, 484 U.S. at 44, 108 S.Ct. at 374.

In this case the material facts, as found by the arbitrator in determining that Gallenbeck's conduct constituted "proper cause"[7] for discipline, are: that during working hours Gallenbeck had, on one occasion, sexually assaulted a female co-worker; that CMC discharged Gallenbeck after learning that he admitted committing the assault; and that, at the time of the discharge, CMC knew of only this one act of sexual assault or harassment perpetrated by Gallenbeck.[8] Prior to deciding that

---

**6.** The review given an arbitration award when it is challenged on public policy grounds is not de novo. When a court reviews an issue under a de novo standard of review, the court is determining questions of fact and law as though the reviewing court was the original trial court (or the arbitration panel). In contrast, when an arbitration award is challenged on public policy grounds, the court must determine whether the arbitrator's interpretation of the contract jeopardizes a well-defined and dominant public policy, taking the facts as found by the arbitrator. The arbitrator cannot consider public policy since public policy questions are for the court, not the arbitrator. An arbitrator who bases an award on public policy considerations exceeds his powers. *Board of County Commissioners of Lawrence County, Ohio v. L. Robert Kimball and Associates*, 860 F.2d 683, 686 (6th Cir.1988).

**7.** The parties' collective bargaining agreement provides that: "The Corporation has the right to hire, to increase and decrease hours, to discipline or discharge for proper cause, to transfer employees from one job assignment to another and to lay off employees from duty because of lack of work, but the exercise of these rights shall not conflict with the provisions of the Agreement." Complaint at Exhibit A, Article IX, Section 9.01. The agreement also provides that seniority shall cease upon discharge for

"good cause." *Id.* at Exhibit A, Article IV, Section 4.90. The agreement does not define "good" or "proper" cause, so the arbitrator is the one who must interpret these phrases. *See E.I. DuPont de Nemours v. Grasselli Employees Independent Association of East Chicago*, 790 F.2d 611, 619 (7th Cir.1986), (Easterbrook, J., concurring) *cert. denied*, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986). He must fulfill his mandate by attempting to construe the general provisions of the contract so as to honor the parties' intentions in light of the tenets of industrial common law, that is, the industry practice or the shop rules.

**8.** CMC invites the court to consider prior incidents in which Gallenbeck assaulted or harassed female co-workers. However, fortuitously for Gallenbeck, these incidents did not come to CMC's attention until after the discharge. The collective bargaining agreement leaves evidentiary matters to the arbitrator. Therefore, Arbitrator Grenig was free to rule that he would not consider after-discovered evidence not relied upon by the employer in ordering the discharge. Consequently, the court cannot consider these prior incidents in deciding whether the award violates public policy. *See United Paperworkers International Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 34 & n. 6 & 39–40, 108 S.Ct. 364, 368 & n. 6 & 371–72, 98 L.Ed.2d 286 (1987).

reinstatement after a thirty day suspension without pay would be the appropriate remedy, the arbitrator found: that Gallenbeck had worked for CMC for approximately fourteen months prior to his discharge; that he had no disciplinary record and had received no warnings concerning his conduct; that he could be rehabilitated; and that CMC had a progressive disciplinary policy.

CMC maintains that Arbitrator Grenig's award violates "the dominant and well defined public policy of the United States against sexual harassment in the workplace." Plaintiff Chrysler Motors Corporation's Brief in Support of Its Cross–Motion for Summary Judgment and Response to Opposition to Defendant Union's Motion for Summary Judgment at 1. This policy identified by the plaintiff meets the Supreme Court's criteria because it is well-established in case law and statutory law that employees may not commit and employers may not tolerate sexual assault or sexual harassment in the workplace. *See, e.g.,* 42 U.S.C. § 2000e–2(a)(1); Wis. Stat. 111.36(1)(b); 29 C.F.R. § 1604.11(a); *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986); *Brooms v. Regal Tube Company,* 881 F.2d 412, 418 (7th Cir.1989); *Swanson v. Elmhurst Chrysler Plymouth,* 882 F.2d 1235, 1237 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 758, 107 L.Ed.2d 774 (1990).

The facts found by the arbitrator show that Gallenbeck's conduct violated this policy. However, the Ninth Circuit has recently pointed out that: "If a court relies on public policy to vacate an arbitral award reinstating an employee, it must be a policy that bars *reinstatement*." *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, International Association of Machinists and Aerospace Workers,* 886 F.2d 1200, 1212 (9th Cir.1989) (*en banc*) (footnotes omitted; emphasis in original). A plurality of the Ninth Circuit explained that:

> Courts cannot merely determine that there is a "public policy" against a particular sort of behavior in society generally and, irrespective of the findings of the arbitrator, conclude that reinstatement

of an individual who engaged in that sort of conduct in the past would violate that policy. In our view, a faithful reading of *Misco* requires something more. A court must both delineate an overriding public policy rooted in something more than "general considerations of supposed public interests," and, of equal significance, it must demonstrate that the policy is one that specifically militates against the relief ordered by the arbitrator.

*Id.* at 1212–1213 (footnote omitted). The rationale for this approach is that:

> If the performance of an illegal act while on the job is all that must be proved to demonstrate the violation of a public policy for purposes of *Grace* and *Misco,* then an arbitrator would be *prohibited* from reinstating any teamster who receives a speeding ticket while driving the company truck, or even an inventory clerk who commits a single act of petty theft. *Grace* and *Misco* do not countenance such results.

*Id.* at 1215–16 (footnotes omitted).

The collective bargaining agreement under consideration here vests discretion to fashion a remedy in the arbitrator. While the agreement provides that the company may discharge an employee for "proper cause," "proper cause" is not defined and there is no list of offenses requiring discharge. *Cf. Delta Queen Steamboat Company v. District 2 Marine Engineers and Beneficial Association, Associated Maritime Officers AFL–CIO,* 889 F.2d 599 (5th Cir.1989) (reinstatement award vacated because arbitrator found riverboat captain "grossly careless" in navigating his ship and contract expressly provided that employee "shall be" discharged for "carelessness"). No explicit contractual provision prohibited CMC from discharging Gallenbeck, but normally, "an arbitrator is authorized to disagree with the sanction imposed for employee misconduct." *United Paperworkers International Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 41, 108 S.Ct. 364, 372, 98 L.Ed.2d 286 (1987). In the absence of any explicit provision the arbitrator is free to bring " 'his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true*

*when it comes to formulating remedies.' "* *Misco,* 484 U.S. at 41, 108 S.Ct. at 372 (emphasis in original) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corporation,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

In the wake of the Supreme Court's *Misco* decision narrowing the public policy exception, most courts have refused to vacate an arbitrator's award of reinstatement on public policy grounds—particularly when the arbitrator has found that the employee received no prior warnings or discipline; or that the employee could be rehabilitated; or that the employer had a progressive discipline policy. *See, e.g., Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, International Association of Machinists and Aerospace Workers,* 886 F.2d 1200 (9th Cir.1989) (*en banc*) (ordering reinstatement of auto mechanic who failed to tighten lug nuts on automobile being sold by employer when arbitrator found employee subject to rehabilitation and unlikely to commit act which violates public policy in the future); *Communication Workers of America v. Southeastern Electric Cooperative of Durant, Oklahoma,* 882 F.2d 467 (10th Cir.1989) (ordering reinstatement of electric company lineman accused of sexual assault on customer when this was lineman's first disciplinary problem in nineteen years with the employer); *United States Postal Service v. National Association of Letter Carriers, A.F.C.-C.I.O.,* 839 F.2d 146 (3d Cir.1988) (ordering reinstatement of postal employee who fired gunshots at his superior's empty car when employee found to be amenable to discipline); *Maggio v. Local 1199,* 702 F.Supp. 989 (E.D.N.Y.) (ordering reinstatement of nurse's aide suspected of abusing nursing home patients when reinstatement would not violate any public policy), *aff'd,* 880 F.2d 1319 (2d Cir.) (mem.), *cert. denied,* —— U.S. ——, 110 S.Ct. 329, 107 L.Ed.2d 319 (1989); *Flushing Hospital and Medical Center v. Local 1199, Drug, Hospital and Health Care Employees Union RWSDU/AFL-CIO,* 685 F.Supp. 55 (S.D.N.Y.1988) (ordering reinstatement of nursing attendant who changed a patient's IV bag without being qualified to do so when arbi-trator found attendant was not likely to continue her wrongful conduct); *Brigham & Women's Hospital v. Massachusetts Nurses Association,* 684 F.Supp. 1120 (D.Mass.1988) (ordering reinstatement of registered nurse who had negligently failed, in a few instances, to follow set procedures when nurse had an excellent work record with only five disciplinary incidents during seven years of service and employer had progressive discipline policy). *See also Daniel Construction Company v. Local 257, International Brotherhood of Electrical Workers, AFL-CIO,* 856 F.2d 1174 (8th Cir.1988) (ordering back pay for employees of nuclear power plant who had been discharged for failing psychological test later found to be invalid), *cert. denied,* 489 U.S. 1020, 109 S.Ct. 1140, 103 L.Ed.2d 200 (1989).

In the two years since *Misco* only two circuits—the Eleventh and the Eighth—have ordered arbitrators' awards to be vacated on policy grounds and these decisions were in cases where employees violated public policies while performing duties integral to their employment and where reinstatement would have jeopardized public health or safety. *See Delta Air Lines, Inc. v. Air Line Pilots Association, International,* 861 F.2d 665 (11th Cir.1988) (affirming district court order vacating award ordering reinstatement of pilot who had been discharged after he had flown passenger plane while intoxicated), *cert. denied,* —— U.S. ——, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989); *Iowa Electric Light and Power Company v. Local Union 204 of the International Brotherhood of Electrical Workers (AFL-CIO),* 834 F.2d 1424 (8th Cir. 1987) (affirming district court order vacating award ordering reinstatement of nuclear power plant machinist who had been discharged for deliberately violating federally mandated safety regulation). *See also Russell Memorial Hospital Association v. United Steelworkers of America,* 720 F.Supp. 583 (E.D.Mich.1989) (vacating award ordering reinstatement of nurse who had been discharged for negligence in administering medication; however, it should be noted, that the Michigan district court relied in part on the Ninth Circuit's panel

decision in *Stead Motors* which was vacated by the full court shortly before the *Russell Memorial* opinion was issued, *see Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, International Association of Machinists and Aerospace Workers*, 843 F.2d 357 (9th Cir. 1988), *withdrawn and rev'd*, 886 F.2d 1200 (9th Cir.1989) (*en banc*).

Arbitrator Grenig's reinstatement award fits within the parameters of both lines of post-*Misco* decisions. Grenig concluded that discharge was too severe and ordered reinstatement only after finding that, although Gallenbeck had only been a CMC employee for fourteen months, he had no prior record of discipline or warnings and that, at the time of the discharge, CMC had no knowledge of his prior misconduct. Grenig also found that "the evidence does not indicate that the Grievant could not be rehabilitated and correct his behavior," [9] and that CMC has a policy of progressive discipline. Under similar circumstances the *Stead Motors* court stated that: "[I]t is only if the grievant is likely to engage in

wrongful conduct which violates public policy in the future that his reinstatement could be said to violate public policy." *Stead Motors of Walnut Creek*, 886 F.2d at 1217.

Gallenbeck's is not one of the "hard cases" like the ones in which the Eleventh and Eighth Circuits vacated reinstatement awards because the lives of many people could have been directly placed at risk by the actions of the employees in question. When Gallenbeck assaulted his co-worker he was not performing an act integral to his job as a fork lift operator.[10] *See Delta Airlines, Inc. v. Air Line Pilots Association, International*, 861 F.2d 665 (11th Cir.1988), *cert. denied*, — U.S. —, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989); *Iowa Electric Light and Power Company v. Local Union 204 of the International Brotherhood of Electrical Workers (AFL–CIO)*, 834 F.2d 1424 (8th Cir.1987).

Arbitrator Grenig did not approve of Gallenbeck's behavior. He merely concluded that, under the circumstances, a thirty day

---

**9.** Although the arbitrator speaks of the probability of rehabilitation in Gallenbeck's case, he does not explain how this can be accomplished by a thirty day suspension. *Cf. United States Postal Service v. National Association of Letter Carriers, AFL–CIO*, 810 F.2d 1239 (D.C.Cir.1987) (reinstatement ordered for postal employee who pled guilty to unlawful delay of the mail after employee demonstrated that he had attended Gambler's Anonymous), *petition for cert. dismissed*, 485 U.S. 680, 108 S.Ct. 1589, 99 L.Ed.2d 770 (1988). Nevertheless, as the *Stead Motors* court explained:

> [A]n arbitral judgment of an employee's "amenability to discipline" is a factual determination which cannot be questioned or rejected by a reviewing court. Judgments about how a specific employee will perform after reinstatement if given a lesser sanction are nothing more than an exercise of the arbitrator's broad authority to determine appropriate punishments and remedies. This rule is supported by the significant societal interest in the rehabilitation of workers who err in the workplace. All of us benefit from employees who perform their jobs safely and properly. All of us suffer when potentially productive workers are relegated to the unemployment lines.

*Stead Motors of Walnut Creek*, 886 F.2d at 1213 (citations omitted).

**10.** In vacating an arbitral award on public policy grounds, the Eleventh Circuit observed that:

> The public policy of which the Supreme Court speaks in *Misco* seems to be a public policy not addressing the disfavored conduct, in the abstract, but disfavored conduct which is *integral to the performance of employment duties*. The question we are instructed by *Misco* to ask is not, "Is there a public policy against the employee's conduct?" but rather, "Does an established public policy condemn the performance of employment activities in the manner engaged in by the employee?"

*Delta Air Lines, Inc. v. Air Line Pilots Association, International*, 861 F.2d 665, 671 (11th Cir. 1988), *cert. denied*, — U.S. —, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989). The court went on to explain that:

> When public policy is offended by what a person does, unrelated to the performance of his employment duties, an employer may well conclude that he should discharge that person as an expression of disapproval, though there be no public policy one way or the other. Where the person performs his employment duties and, *in doing so*, violates standards, restraints and restrictions on conduct, clearly and explicitly established by the people in their laws, a requirement that the employer suffer that malperformance and not discharge the offender does itself violate the same well established public policy.

*Id.* at 674.

suspension without pay was an adequate sanction. Even if the court agreed with CMC that a more severe sanction was appropriate, the court is not permitted to review the merits of the arbitral award. *See United Steelworkers of America v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

Given the arbitrator's findings, CMC has failed to meet its burden of identifying the existence of a well defined, dominant and explicit public policy sufficiently grounded in federal or state laws and legal precedents with which the award conflicts. No statute or judicial opinion has been cited which makes it illegal to employ a person who has sexually assaulted or harassed a co-worker on one occasion.[11] The Seventh Circuit has ruled that "an employer is liable for an employee's acts if the employer knew or should have known about an employee's acts of harassment and fails to take appropriate remedial action." *Brooms v. Regal Tube Company*, 881 F.2d 412, 421 (7th Cir.1989). However, the employer need not fire the offending employee in all instances. The court of appeals only requires that: "An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." *Id.* (employer failed to take reasonable remedial steps in case where it knew employee had sexually harassed fellow employee and employer merely postponed merit increase and issued verbal reprimand).

Consequently, the court must decline CMC's request to vacate Arbitrator Grenig's reinstatement award on the ground that enforcement would violate public policy. The award will be confirmed; CMC's motion for summary judgment will be denied; and the Unions' motion for summary judgment will be granted.

### B. *Prejudgment Interest*

In their counterclaim the Unions ask that "interest be granted on all moneys found owing to the Grievant, such interest to commence from July 24, 1989, the date of the issuance of the Award." Answer and Counterclaim at 6. The defendants have marshalled no specific facts or propositions of law in support of an award of prejudgment interest. They merely point out that all the circumstances of the case warrant such an award and that the plaintiff has not opposed it. *See* Defendants' Reply Brief in Support of Its [sic] Motion for Summary Judgment and in Opposition to Plaintiff's Cross–Motion for Summary Judgment at 6; Memorandum in Support of Defendants' Motion for Summary Judgment to Have Plaintiff's Complaint Dismissed and to Provide the Relief as Sought by Defendants in Its [sic] Counterclaim at 10. Awarding prejudgment interest in a section 301 action is within the discretion of the court. *See International Association of Bridge, Structural & Ornamental Ironworkers, Local Union No. 103, AFL–CIO v. Higdon Construction Company, Inc.*, 739 F.2d 280, 283 (7th Cir.1984). In this case the defendants have not provided the court with a specific basis for awarding prejudgment interest. Therefore, the request for prejudgment interest on the award of backpay will be denied.

### C. *Attorney Fees*

The Unions are also requesting attorney fees. Under the American Rule, absent contractual or statutory authorization, a prevailing litigant ordinarily may not collect attorney fees from the losing side. *See Summit Valley Industries, Inc. v. Local 112, United Brotherhood of Carpenters & Joiners of America*, 456 U.S. 717, 721, 102 S.Ct. 2112, 2114, 72 L.Ed.2d 511 (1982). However, a court may assess attorney fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975).

Section 301 of the Labor Management Relations Act does not provide for the

---

11. Even if Gallenbeck had been arrested or convicted for sexual assault, Wisconsin law would forbid discriminating against him unless the circumstances of his offense were found to relate substantially to the circumstances of his particular job. *See* Wis.Stat. § 111.335.

shifting of costs and fees in suits for enforcement of arbitration awards. Consequently, any award of fees is discretionary. *See Fabricut, Inc. v. Tulsa General Drivers, Warehousemen and Helpers, Local 523,* 597 F.2d 227, 230 (10th Cir.1979). The Seventh Circuit has stated that in a section 301 case the prevailing party is entitled to fees only when the opponent's suit was "frivolous," that is, brought in bad faith to harass rather than to win. *See Local 879, Allied Industrial Workers of America, AFL–CIO v. Chrysler Marine Corporation,* 819 F.2d 786, 791 (7th Cir.1987); *Miller Brewing Company v. Brewery Workers Local Union No. 9,* 739 F.2d 1159, 1162 (7th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985).

In this case the record does not show that CMC's refusal to abide by the arbitrator's award was without justification or that it was merely a frivolous, dilatory tactic. CMC's challenge was based upon a reasonable inquiry into the law, even though the challenge ultimately failed.

The issue of whether and under what circumstances a court should vacate an arbitration award on public policy grounds is a question which has been hotly litigated in the two years since the United States Supreme Court attempted to set the contours of the public policy exception in *United Paperworkers International Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Following *Misco,* the Seventh Circuit has not re-evaluated the public policy exception in a case involving employee misconduct.[12] And, it

was not until after CMC commenced this case that the Ninth Circuit, sitting *en banc,* issued a comprehensively researched and reasoned opinion dealing with the application of the public policy exception to reinstatement remedies. *See Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, International Association of Machinists and Aerospace Workers,* 886 F.2d 1200 (9th Cir.1989) *(en banc ).*[13]

Because the law in this area is unsettled and rapidly evolving, and because the question of whether an arbitrator's award violates public policy is a question for the court to decide,[14] the court concludes that the plaintiff's challenge to the award was reasonably justified and finds that there is no evidence of bad faith or frivolous, dilatory tactics. Consequently, the court will not award attorney fees to the Unions. *See Sheet Metal Workers Local Union No. 20 v. Baylor Heating and Air Conditioning, Inc.,* 688 F.Supp. 462, 474 (S.D.Ind.1988) (no fees awarded where law unsettled), *aff'd,* 877 F.2d 547 (7th Cir.1989); *Brigham & Women's Hospital v. Massachusetts Nurses Association,* 684 F.Supp. 1120, 1125 (D.Mass.1988) (no fees awarded where circuits in disagreement); *Peter Cooper Corporations v. United Electrical, Radio and Machine Workers of America, Local 1132,* 472 F.Supp. 692, 696 (E.D.Wis.1979) (no fees awarded due to "unsettled nature of caselaw decisions").

### ORDER

Because there are no material facts in dispute and because the defendant Unions

---

**12.** The Seventh Circuit did discuss the public policy exception in *Sheet Metal Workers Local Union No. 20 v. Baylor Heating and Air Conditioning, Inc.,* 877 F.2d 547 (7th Cir.1989) where an interest arbitration clause in a prehire collective bargaining agreement was unsuccessfully challenged as being violative of public policy.

**13.** As discussed in Part III(A)(2), above, the Ninth Circuit held in *Stead Motors* that no identified public policy barred reinstatement of an employee who had improperly serviced a car's wheel assembly. However, the court was divided. Only a plurality of eleven judges of the Ninth Circuit, sitting *en banc,* reversed a three-judge panel of the same court, 843 F.2d 357 (9th Cir.1988), which had affirmed a district court's order vacating an arbitrator's award on public

policy grounds. Two of the eleven judges dissented from the plurality opinion, while another judge filed an opinion concurring in part and dissenting in part. Two additional judges joined in this opinion and one other judge joined in part.

**14.** *See Sheet Metal Workers Local Union No. 20 v. Baylor Heating and Air Conditioning, Inc.,* 877 F.2d 547, 551 (7th Cir.1989); *Board of County Commissioners of Lawrence County, Ohio v. L. Robert Kimball and Associates,* 860 F.2d 683, 686 (6th Cir.1988), citing *W.R. Grace & Company v. Local Union 759, International Union of United Rubber, Cork, Linoleum & Plastic Workers of America,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983).

are entitled to summary judgment as a matter of law, the court ORDERS that the Defendants' Motion for a Summary Judgment Dismissing Plaintiff's Complaint and for a Summary Judgment Granting Defendants' Counterclaim (filed September 14, 1989) IS GRANTED IN PART AND DENIED IN PART. *See* Federal Rule of Civil Procedure 56. Summary judgment is granted in favor of the defendants on all the claims contained in the plaintiff's complaint; the July 24, 1989, award of Arbitrator Jay E. Grenig is affirmed and shall be enforced; the defendants are not entitled to prejudgment interest; and the costs of this action are awarded to the defendants. Attorney fees are denied to the defendants.

IT IS FURTHER ORDERED that Plaintiff Chrysler Motors Corporation's Cross-Motion for Summary Judgment (filed October 3, 1989) IS DENIED.

IT IS FURTHER ORDERED that this action IS REMANDED to Arbitrator Jay E. Grenig for a computation of the monetary amount of the award. *See United Steelworkers v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter judgment as a separate document. The judgment shall provide that:

This action came on for hearing before the Court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED

that, as prayed for in the counterclaim of defendants International Union, Allied Industrial Workers of America, AFL-CIO and Local 793, plaintiff Chrysler Motors Corporation's complaint is dismissed with prejudice; the July 24, 1989, award of Arbitrator Jay E. Grenig is affirmed and shall be enforced; prejudgment interest is denied; and that plaintiff Chrysler Motors Corporation shall pay defendants International Union, Allied Industrial Workers of America, AFL-CIO and Local 793 their costs of this action.

IT IS FURTHER ORDERED AND ADJUDGED

that attorney fees for defendants International Union, Allied Industrial Workers of America, AFL-CIO and Local 793 are denied.

IT IS FURTHER ORDERED AND ADJUDGED

that this action is remanded to Arbitrator Jay E. Grenig for a computation of the monetary amount of the award.

Done and Ordered.