**BRIGHAM & WOMEN'S HOSPITAL, Plaintiff,**

v.

**MASSACHUSETTS NURSES ASSOCIATION, Defendant.**

**Civ. A. No. 87–2355–C.**

United States District Court, D. Massachusetts.

April 11, 1988.

Arthur P. Menard, Chelsea, Mass., for plaintiff.

Dahlia C. Rudavsky, McDonald, Noonan and Kaplan, Newton, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is an action under § 301 of the Labor–Management Relations Act, 29 U.S. C. § 185, brought by the plaintiff, Brigham and Women's Hospital (the "Hospital") to vacate an arbitration award in favor of the defendant, The Massachusetts Nurses Association (the "MNA"). Both parties move for summary judgment, and the defendant also moves for attorney's fees.

### I. *Background*

There is no factual dispute in this case. Sharon Morgan, a registered nurse, was hired by the Hospital in 1979. Prior to 1983, Morgan worked in the main recovery room. Her performance reviews up to 1983 were generally favorable, save for some difficulties in interpersonal and communications skills. In 1983, she was transferred to the Hospital's labor and delivery area.

Morgan's first performance review after being transferred noted the same difficulties as had previous reviews. On February 21, 1985, however, Morgan received a verbal warning from the Head Nurse for rudeness to co-workers in the presence of a patient. In addition to the verbal warning, the Head Nurse issued a "Counseling/Warning Notice" concerning the incident. This notice was signed by Morgan.

On June 12, 1985, Morgan left to the care of the recovery room staff a patient for whom she was responsible. Her actions were contrary to the orders of her immediate supervisor. As a result, Morgan was issued a written warning for refusing to follow orders.

On August 12, 1985, Morgan was overseeing a patient who had recently delivered by Cesarian section. While under Morgan's care, the patient's blood pressure rose from 120/80 to 176/120 within three and a half hours. Morgan failed to notify the patient's doctor. As a result of her actions, the doctor wrote to Morgan's supervisor that the situation "represented a medical emergency necessitating immediate medical attention ... [The patient's] care was compromised to a great extent because [Morgan] did not call for medical personnel." Morgan was given the opportunity to read this letter, but refused to do so. Morgan received a written notice for failing to maintain nursing standards.

On October 11, 1985, Morgan called a patient's physician, telling him he was needed right away. He cancelled his office hours, and came to the Hospital. In doing so, Morgan had not consulted the proper personnel, and consequently received a three day suspension.

Finally, in April 1986, Morgan received orders by phone to administer to a patient a mixture of two drugs. Morgan did not record the orders on the chart, as required. She administered the drugs in a manner that was contrary to the manner required for one of the drugs. Her supervisor noted that Morgan had again failed to meet nursing standards. On April 10, 1986, Morgan was terminated. Her termination notice stated:

> Sharon's discharge is a result of a series of events of failure to meet the expected standards of nursing performance for which she received counseling, 3 warnings and a suspension. The final event was two medication errors and the failure to document telephone orders.

### II. *The Arbitration Award*

Morgan challenged her dismissal according to the procedures set out in the collective bargaining agreement (the "Agreement") between the Hospital and the MNA.[1] Article 11.7 of the agreement pro-

---

1. Article 12.2 of the agreement provides for submission of the dispute to arbitration. The arti-

cle further states that the arbitrator's decision shall be final and binding on the parties, provid-

**1122**

vides that a nurse may be discharged only for "just cause." Accordingly, the issue submitted to the arbitrator was whether the Hospital violated the collective bargaining agreement by discharging Morgan. After a five day hearing, the arbitrator found that the Hospital did not have just cause to fire Morgan, and thus violated the collective bargaining agreement. He ordered Morgan reinstated with full pay, including back pay.

In determining whether Morgan was dismissed for "just cause," the arbitrator began by noting that the concept of just cause required the Hospital to adhere to its own published work rules and to apply these rules impartially and equally to all employees. The arbitrator reasoned that if the Hospital failed to follow its own rules in discharging Morgan, or disciplined Morgan in situations in which others had not been similarly disciplined, then there was no just cause to discharge Morgan.

The arbitrator noted that the Hospital had failed to follow several of its own rules. First, the Hospital disciplinary policy contained a one year foregiveness policy. This policy required that records of disciplinary action against an employee will be destroyed after one year, unless there is a similar offense within a year of the first offense. The Hospital did not destroy the records of the February 21, 1985 incident, as they should have. This incident should have played no role in the decision to terminate Morgan. Therefore, the arbitrator analyzed the just cause issue as if this incident had not occurred.

The next disciplinary rule considered by the arbitrator related to notice to the employee of negative comments. Under both the Hospital's Discipline Policy and the Agreement, the Hospital was prohibited from making derogatory entries in a nurse's personnel record without notice to the nurse. The arbitrator reasoned that this prohibition applied to a supervisor's anecdotal records as well as the employee's personnel file. The arbitrator found that the supervisor failed to notify Morgan of a document kept by her containing negative

ed that the arbitrator has no power to add to or

information about Morgan. Use of this document in disciplining Morgan, the arbitrator concluded, violated the Agreement. In addition, two memos relating to the "blood pressure" incident were placed in Morgan's personnel file without notice to her. This, the arbitrator concluded, also violated the Agreement. At the same time, however, the arbitrator found that the physician's letter was properly in Morgan's file since she was given a chance to read it.

The arbitrator then considered the issue of industrial "equal protection." The arbitrator noted that other nurses had committed equally serious, or more serious, medical errors without subsequent disciplinary action. "Such disparate administration of discipline," the arbitrator noted, "does not comport with the sense of fair play inherent to the contractual concept of just cause."

Finally, the arbitrator applied the Hospital's "progressive discipline" policy. Under the Hospital's disciplinary Policy, an employee could be terminated under one of three conditions: 1) for "gross violation," such as fighting, drunkeness, dishonesty, theft, or conviction of a crime involving moral turpitude; 2) where more than two warnings are given for the same offense; 3) after an offense that is similar to one for which a suspension was previously imposed on the employee. The arbitrator concluded that as to the second situation, only two of the incidents for which Morgan received warnings were the "same." He viewed the blood pressure incident and the medication incident to be the same, while the other incidents were of a different nature. As to the third situation, the arbitrator reasoned that the final, medication incident was not "similar" to the incident for which Morgan was suspended. Since Morgan's discharge did not meet the substantive requirements set out in the Hospital's own Disciplinary Policy, the arbitrator concluded that the discharge was not for just cause.

### III. *Discussion*

The Hospital seeks to vacate the arbitrator's award for a number of reasons. In

modify the agreement.

reviewing the decision of an arbitrator, however, the permissible scope of the court's review is extremely limited. Generally, courts may not review the merits of an award, even if the parties allege that the award rests on errors of fact or on misinterpretation of the contract. *United Paperworkers International Union, AFL–CIO v. Misco, Inc.,* — U.S. ——, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1988). The principle question for the court in reviewing an arbitrator's award is whether the award is based on the collective bargaining agreement rather than on the arbitrator's "own brand of industrial justice." *Steelworker's v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). If the arbitrator, in making his award, was "even arguably construing or applying the contract and acting within the scope of his authority," his or her decision must stand, even if the court is convinced that the arbitrator committed a serious error in reasoning. *United Paperworkers,* — U.S. at ——, 108 S.Ct. at 371. *See also Bayamon Can Co., Inc. v. Congreso De Uniones Industriales De Puerto Rico,* 843 F.2d 65 (1st Cir.1988). Improvident, or even silly, factfinding is not sufficient grounds to overturn an arbitrator's award. *Id.* — U.S. at ——, 108 S.Ct. at 371.

Despite this very narrow scope of review, a court may, in certain circumstances, vacate an arbitrator's award that was within the arbitrator's authority. The Federal Arbitration Act allows federal court to vacate certain arbitration awards

(a) Where the award was procured by corruption, fraud, or undue means;

(b) Where there was evident partiality or corruption in the arbitrators, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of

any other misbehavior by which the rights of any party have been prejudiced;

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made;

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S. § 10.[2]

■ In this case, the Hospital first argues that the arbitrator exceeded his authority under the Agreement. The Agreement expressly provides that the arbitrator may not "add to or modify" the Agreement in any respect. The Hospital contends that by applying the Hospital's Disciplinary Policy, which is not part of the Agreement, the arbitrator added the Policy's terms to the Agreement, thereby exceeding his authority.

I agree with the MNA that the arbitrator did not exceed his authority in making his award. The issue submitted to the arbitrator was whether the Hospital had "just cause" to discharge Morgan. The Agreement does not, however, define "just cause." Since the Agreement did not expressly state what circumstances constituted just cause, the arbitrator was required to look elsewhere for guidance. When faced with an ambiguous term in the Agreement, arbitrators may look to many sources, as long as the award "draws its essence" from the Agreement. *Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361. For instance, an arbitrator may look to "industrial common law," that is, the industry practice or the shop rules, to interpret the collective bargaining agreement. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1959). The Hospital's Disciplinary Policy involved here is equally a pertinent

---

**2.** The Act applies to contracts which evidence a transaction involving commerce and which provide for arbitration of disputes arising out of the contract or transaction. 9 U.S.C. § 1. The Act applies to collective bargaining agreements. *Electronics Corp. of America v. Int'l Union of Electrical, Radio and Machine Workers, Local 272,* 492 F.2d 1255, 1258 (1st Cir.1974).

**1124**

guide for interpreting the Agreement. The Hospital promulgated these rules to provide guidelines for proper behavior on the job. It is logical to suppose that these rules are relevant to the issue of whether an employee has acted so improperly as to warrant discharge. In applying the Disciplinary Policy to the dispute, then, the arbitrator did not add to the terms of the Agreement. Rather, he looked to a relevant source for interpreting an ambiguous phrase. In such circumstances, the award did indeed "draw its essence" from the Agreement. Therefore, the arbitrator did not exceed his authority in making the award.

■ The Hospital next attacks the arbitrator's finding that the Hospital made derogatory entries in Morgan's record without notice to her, thus violating the Agreement. The Hospital contends that the entries were "anecdotal nursing notes" rather than "derogatory entries." Moreover, the Hospital argues that the entries were made in the Head Nurse's personal notes rather than in Morgan's official personnel record. Since the arbitrator changed the meaning of the Agreement's clear and unambiguous language, the Hospital urges, he exceeded his authority.

The Hospital is certainly correct in arguing that the arbitrator does not have the authority to alter or ignore unambiguous language in the Agreement. *Fabricut, Inc. v. Tulsa General Drivers,* 597 F.2d 227, 229 (10th Cir.1979); *Union Independiente De Empleados Del Hato Rey Psychiatric Hosp. v. Hato Rey Psychiatric Hospital,* 652 F.Supp. 241, 243 (D.P.R. 1986). The terms on which the Hospital focuses, however, are not as definite as the Hospital contends. The Agreement refers to the employee's "personnel record." The Phrase "personnel record" could rationally be construed to include the supervisor's personal notes on the employee. There is no indication that the parties intended to limit the meaning of that phrase to cover only the official file of the employee's history maintained by the personnel department. The Hospital's attempted distinction between "derogatory entries" and "anec-

dotal notes" is even more unreasonable. In short, these two phrases are, in the circumstances of this dispute, open to interpretation. As such, the arbitrator did not exceed his authority in construing those phrases as he did.

■ The Hospital next attacks several of the arbitrator's findings as being unsupported by the evidence and based on faulty reasoning. Specifically, the Hospital argues that the conclusion that Morgan was unfairly singled out for discipline is not supported by the record. The arbitrator's conclusion of what constitutes "similar" offenses for the purpose of the Hospital's progressive discipline policy, the Hospital argues, is also illogical. Such decisions, however, are precisely the type of decisions which are not subject to review by a court. In essence, the Hospital is arguing that the arbitrator's award is based on faulty fact-finding. Such an error, however, is not grounds for vacating an award that was made within the arbitrator's authority. *United Paperworkers,* — U.S. at —, 108 S.Ct. at 371.

The Hospital also contends that the arbitrator applied his own judgment of nursing standards, thus imposing his own brand of social justice. As evidence of this, the Hospital points to the arbitrator's comment that he is a "former Army medic himself." To begin with, the Hospital takes this comment out of context and twists the obvious meaning. In reality, the arbitrator was noting his awareness of the importance of high nursing standards. In saying this, the arbitrator was *supporting* the Hospital's position, rather than rejecting it outright. As for the assertion that the arbitrator was imposing his "own brand of social justice," I merely reiterate that the arbitrator was interpreting and applying the Agreement signed by the parties. Moreover, in doing so, the arbitrator looked to the Disciplinary Policy, which was promulgated by the Hospital itself. The Hospital, therefore, cannot rationally argue that the arbitrator unilaterally imposed his own standards of behavior on the parties.

■ Finally, the Hospital argues that the award violates public policy because it re-

quires reinstatement of a nurse who is incompetent. Massachusetts regulations establish the general responsibilities and functions of a registered nurse. See 244 C.M.R. § 3.02 (1986). The Hospital argues that these regulations evidence a public policy that RN's be capable of properly carrying out these functions. Reinstatement of Morgan, it argues, would violate this public policy.

In *United Paperworkers*, — U.S. —, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), the United States Supreme Court addressed the issue of when a court may vacate an arbitration award on public policy grounds. The public policy must be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. *Id.* at —, 108 S.Ct. at 374. Moreover, it must be clearly shown that enforcement of the award would violate the public policy. *Id.* at —, 108 S.Ct. at 374.

Here, the Hospital is arguably correct in asserting the regulations establish a public policy that RN's be competent. Even assuming that there is such a policy, however, the Hospital has not shown reinstatement of Morgan would clearly violate that policy. The arbitrator did not find that Morgan was incompetent, or that Morgan was unable to properly carry out the basic responsibilities of an RN. Nor is this Court in a position to make such a finding. The parties bargained for the arbitrator, not the courts, to be the factfinder in labor disputes. *See id* at —, 108 S.Ct. at 374. Even if this court was authorized to make such a finding, the incidents cited do not establish that Morgan was incompetent. At most, the incidents establish that Morgan failed, in a few instances, to follow the set procedure. Prior to 1985, Morgan had an excellent work record, and received good reviews. The five disciplinary incidents during the seven years of her employment hardly indicate that Morgan was clearly incompetent. Therefore, reinstatement of Morgan does not violate public policy.

Since the arbitrator did not exceed his authority under the collective bargaining agreement, and since his award does not violate public policy, the award should be affirmed. The defendant's motion for summary judgment should be granted, and the plaintiff's motion for summary judgment should be denied.

The MNA also moves for attorneys fees in this action. In actions to enforce or vacate an arbitrator's award, the court may, in its discretion, award attorneys fees to the prevailing party if the losing party litigated the matter despite the fact that it was unable to present any rational arguments in support of its position. *See, e.g., Sheet Metal Workers Int'l Ass'n Local Union #420 v. Kinney Air Conditioning*, 756 F.2d 742, 747 (9th Cir. 1985) (award of attorneys fees was clearly erroneous where the losing party presented colorable arguments, and there was no evidence arguments made in bad faith); *Amalgamated Meat Cutters v. Great Western Food Co.*, 712 F.2d 122, 125 (5th Cir.1983) (a party to an arbitration award is not entitled to attorneys fees unless noncomplying party's refusal was without justification); *Fabricut, Inc. v. Tulsa General Drivers*, 597 F.2d 227, 230 (10th Cir.1979) (court did not abuse its discretion in denying attorneys fees where losing party did not act in bad faith or without justification). In this case, the Hospital's arguments that the arbitrator exceeded his authority were not justified in light of the overwhelming case law to the contrary. However, the issue of when a court may vacate an arbitration award on public policy grounds was subject to a difference of opinions among the circuits, and only recently addressed by the Supreme Court. *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, — U.S. —, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Moreover, the issue itself is one that is not always subject to easy resolution. In light of these considerations, I cannot say that the Hospital's argument concerning public policy was without justification or not colorable. Therefore, the MNA's motion for attorneys fees should be denied.

Order accordingly.

## ORDER

In accordance with memorandum filed this date, it is ORDERED:

1. The plaintiff's motion for summary judgment is denied.

2. The defendant's motion for summary judgment is granted.

3. The defendant's motion for attorney's fees is denied.