COMMUNICATION WORKERS OF AMERICA, an unincorporated association, Plaintiff–Appellee,

v.

SOUTHEASTERN ELECTRIC COOPERATIVE OF DURANT, OKLAHOMA, an Oklahoma corporation, Defendant–Appellant.

No. 88–2902.

United States Court of Appeals, Tenth Circuit.

Aug. 11, 1989.

David M. O'Dens of Lampkin, McCaffrey & Tawwater, Oklahoma City, Okl., for plaintiff-appellee.

---

**468**

Charles S. Plumb of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl., for defendant-appellant.

Before MOORE, ANDERSON and BRORBY, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

The single issue for review is whether public policy precludes the enforcement of an arbitration award under a collective bargaining agreement. We are persuaded that under *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), the district court properly granted summary judgment in favor of Communication Workers of America and ordered the employee's reinstatement. We therefore affirm.

## I.

In May 1986, Southeastern Electric Cooperative of Durant, Oklahoma, a rural electric cooperative and public service corporation, discharged Willie Gray, one of its district linemen, after a customer reported that Gray sexually assaulted her in her home. Mr. Gray's union, the Communication Workers of America (the Union), filed a grievance under the procedure set forth in its collective bargaining agreement (the Agreement) with Southeastern. The parties submitted the dispute to arbitration and agreed the issue to be resolved was whether Mr. Gray was discharged for just cause, and, if not, what the remedy should be. After a hearing in which testimony from various company representatives, the complainant, and Mr. Gray was received, the arbitrator concluded "a one-time offense, albeit it was a sexual offense of a

serious nature in a sensitive industry, should not lead to discharge."

To reach this conclusion, the arbitrator compared this case to another one in which the employer specifically warned the employee that the commission of a second sexual offense while on the job would result in his termination. Although discharge was then warranted when that employee committed a second offense, the arbitrator believed in Mr. Gray's case that some corrective discipline was more appropriate "in an effort to salvage the career of this long-time employee with such a good work record." The arbitrator found that during his nineteen years of employment with Southeastern, Mr. Gray maintained a good work record, which, despite one disciplinary matter that was ordered expunged from his record, reflected no warnings for any "sex-related offenses." The arbitrator concluded that just cause did not exist for Mr. Gray's discharge, but that suspension for one month without pay was commensurate with the improper conduct.

Southeastern now urges we set aside the arbitrator's award ordering Mr. Gray's reinstatement because it violates public policy.[1] While Southeastern agrees that *Misco* controls our review, it gives a broader reading to the Court's statement of the public policy exception and implicitly requires we expand the narrow focus of appellate review.

In *Misco*, the Court underscored that judicial intervention into disputes arising under collective bargaining agreements necessarily injects the court into that very ongoing collective bargaining process. 108 S.Ct. at 371. Thus, courts have limited authority to review the merits of labor arbitration awards. *Bayamon Can Co. v. Congreso de Uniones Industriales de Puerto Rico*, 843 F.2d 65, 66 (1st Cir.1988). We are not free, *Misco* teaches us, to reject factual findings with which we disagree or the arbitrator's interpretation of the contract. 108 S.Ct. at 371. "So, too, where it is contemplated that the arbitrator will de-

---

**1.** We do not address the Union's statute of limitations argument as an alternative grounds for disposition.

termine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Id.* As long as the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.*

The arbitrator proceeded under Article VII, "Grievance Procedure–Arbitration," of the Agreement in which the parties agreed the arbitrator would decide only if there was just cause for Mr. Gray's termination.[2] Moreover, the Agreement provides the arbitrator's decision shall be final and binding upon both parties. Article VII, section 4. Thus, "the parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them who had more opportunity to observe [the employee] and to be familiar with the [company] and its problems." *Id.* at 374.

Nevertheless, Southeastern urges that the "valid and well-defined" public policy of preventing "assault and sexual oppression of women" must override the arbitrator's factual findings and award. In support, Southeastern distinguishes *Misco* factually because, while there was no evidence of the employee's actual use of drugs in the workplace in *Misco*, the arbitrator here found Gray committed a sexual offense while on his work route. Southeastern insists this misconduct goes to the heart of Mr. Gray's job responsibilities in a sensitive industry. Southeastern relies on *Delta Air Lines,* *Inc. v. Air Line Pilots Ass'n, Int'l,* 861 F.2d 665 (11th Cir.1988).

In *Delta Air Lines,* the Eleventh Circuit affirmed the discharge of an airline pilot who operated an aircraft while intoxicated. Applying *Misco,* the court observed the disfavored conduct must be *"integral to the performance of employment duties." Id.* at 671. "In deciding to commit the wrong, the wrongdoer was … making an employment decision." *Id.* Additionally, the court detailed the laws and legal precedent the pilot's action contravened.

We are satisfied, however, in Mr. Gray's case, the arbitrator fully considered the evidence before him at the time of the discharge.[3] Our reading of the record and hearing transcript reveals the arbitrator entertained substantially conflicting evidence [4] and tangential considerations while observing the demeanor of the witnesses and evaluating their credibility. Albeit preventing the sexual assault and abuse of women is of paramount importance, we believe the just cause determination fully incorporated this important concern under all of the circumstances.[5] Thus, we cannot substitute our understanding of the workplace and judgment of Mr. Gray's conduct to conclude the conduct was an "employment decision" in which the complained of acts were "integral to the performance of his employment duties." *Delta Air Lines,* 861 F.2d at 665. The arbitrator recognized that this was a one-time offense and specifically noted Mr. Gray's "penitent and apologetic attitude" in response to his act. Based on the Agreement, the arbitrator

---

**2.** Article VIII, section 1, states that no employee covered by the collective bargaining agreement shall be suspended, demoted or discharged or otherwise disciplined except for "just cause."

**3.** In *Misco,* the arbitrator had refused to consider evidence unknown to the employer at the time of the employee's discharge.

**4.** In his examination of the facts, the arbitrator noted that his account was a composite of both Mr. Gray's and the complainant's testimony upon finding the differences insignificant and the complainant's version generally more substantiated. Although Mr. Gray admitted his arm fell from the complainant's shoulder and touched her buttock, the complainant stated he also forced a kiss on her and touched her breast. The complainant reported the incident to the district attorney, but charges were later dropped.

**5.** Recently, in *Williams v. Maremont Corp.,* 875 F.2d 1476 (10th Cir.1989), we recognized the public policy consideration of eliminating sexual harassment from the workplace in construing an employment contract. While that analysis was appropriate to evaluate the employer's response to his employee's conduct in "an area of judicially created contracts and contract rights," at 1485, it is inapplicable to the narrow confine of our review here. However, there is no conflict in the overriding concern for protecting women in the workplace.

premised his award on the principle that "[p]enalties are designed to correct if possible." The arbitrator concluded, "This leaves us with a long-time employee—about 19 years—with a good to excellent work record and no prior conduct involving a sexual offense, and of course ... no prior warnings of discharge if such an offense were repeated. I believe that corrective discipline should be applied...."

Under all of the circumstances, the arbitrator brought "his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies." United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), *quoted in Misco*, 108 S.Ct. at 372 (emphasis added).

The judgment of the district court granting the Union's motion for summary judgment and ordering the enforcement of the arbitration award is AFFIRMED.

The mandate shall issue forthwith.