**BPS GUARD SERVICES, INC., d/b/a Burns International Security Services, Inc., Plaintiff,**

v.

**INTERNATIONAL UNION, UNITED PLANT GUARD WORKERS OF AMERICA and its Local 228, Defendants.**

**No. 89 C 7510.**

United States District Court, N.D. Illinois, E.D.

May 3, 1990.

Roger J. Guerin, Alan S. Madans, Rothschild, Barry & Myers, Chicago, Ill., for plaintiff.

Scott A. Brooks, Joseph Bastianelli, Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, Detroit, Mich., Stephen Yokich, Cornfield and Feldman, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

After an arbitrator ordered the reinstatement of one of plaintiff's former employees who had been discharged for violating a safety regulation, plaintiff brought this action pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). Plaintiff's complaint asks the court to overturn the arbitrator's decision

for being violative of public policy. The parties agree on the material facts underlying this action, so they have filed cross motions for summary judgment pursuant to Fed.R.Civ.P. 56(a). For the reasons stated herein, defendants' motion for summary judgment is granted; plaintiff's motion is denied.

## FACTS

Plaintiff BPS Guard Services, Inc., d/b/a Burns International Security Services, Inc. ("Burns"), provides guard services for Commonwealth Edison's Braidwood Nuclear Generating Station in Braidwood, Illinois. In January 1988, Karen Sullivan was employed by Burns at the Braidwood Station as a nuclear security officer. On January 21–22, 1988, Sullivan was assigned to firewatch duty, a position requiring her to patrol a designated area and remain alert for signs of fire. The firewatch was posted as a substitute for Braidwood's mechanical fire detection system, which was not functioning in the area at that time.

When Sullivan assumed her firewatch post, she received specific written instruction from Burns not to leave her post without obtaining relief. The "Post Order" she received provided in part: "The firewatch posts are continuous until otherwise directed by supervision. The firewatch will not leave his/her assigned post unless properly relieved or so directed by supervision." Burns' written training materials, which Sullivan had previously received, also emphasized the importance of a guard's duty to remain on her post. In addition, Burns had provided Sullivan with a hand-held, two-way radio so Sullivan could contact her supervisors in case she required relief from her duty. Telephones also were available for that purpose in the area to which Sullivan was assigned.

Notwithstanding Burns' instructions, on January 22, 1989, Sullivan left her post without permission or relief. She claimed she left her area to seek an aspirin for a headache; she also stated that she had only been away from her post for a few minutes when she encountered a supervisor. As a result of Sullivan's absence from her post,

Commonwealth Edison reported a Fire Reporting Deviation pursuant to the regulations of the Nuclear Regulatory Commission ("NRC"). In addition, four days after the incident, Burns discharged Sullivan for leaving her firewatch post. Burns stated the discharge was made pursuant to Category A, Rule 24, of its Employee Code of Conduct, which makes "abandonment or desertion of post without authorized relief" a dischargeable offense.

After Sullivan's discharge, her union, defendant International Union, United Plant Guard Unions of America Local 228 ("UPGWA"), filed a grievance on her behalf. The grievance was submitted to arbitration pursuant to the collective bargaining agreement between Burns and the UPGWA. On July 6, 1989, the arbitrator ruled in favor of the UPGWA and ordered the reinstatement of Sullivan, with partial back pay. The arbitrator acknowledged the significance of Sullivan's assignment and the seriousness of her failure to remain on her firewatch post as instructed. The arbitrator also conceded that Sullivan's conduct violated Burns' rules and directives. Nevertheless, the arbitrator found that Burns lacked just cause to discharge Sullivan because Burns had not provided her with adequate notice that a brief departure from her post would result in discharge.

## DISCUSSION

Where parties to a labor contract agree to submit their disputes to arbitration, federal courts generally are reluctant to interfere with the arbitrator's decision. The federal policy favoring the private settlement of labor disputes would be undermined if courts re-examined the merits of every labor conflict resolved by an arbitrator. *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987); *see also International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Keystone Consolidated Industries, Inc.,* 782 F.2d 1400, 1402 (7th Cir.1986). Thus, even if a federal court disagrees with an arbitrator's

ruling, or finds the arbitrator's award ambiguous, the court must enforce the award, "[a]s long as the arbitrator's award 'draws its essence from the collective bargaining agreement' and is not merely 'his own brand of industrial justice.'" *Misco*, 484 U.S. at 36, 108 S.Ct. at 370 (quoting *Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

■ However, where the arbitrator's award violates public policy, the court may refuse to enforce the award. *Misco*, 484 U.S. at 42–43, 108 S.Ct. at 373 (citing *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983)). Unlike issues concerning the merits of the arbitrator's award, where courts must give deference to the arbitrator's findings, the question of public policy is ultimately one for resolution by the courts. *Grace*, 461 U.S. at 766, 103 S.Ct. at 2183; *E.I. DuPont de Nemours & Co. v. Grasselli Employees Independent Association of East Chicago*, 790 F.2d 611, 615 (7th Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986). Nevertheless, the judiciary must remain cautious about overruling an arbitrator's award on public policy grounds. *E.I. DuPont*, 790 F.2d at 615. A court cannot refuse to enforce an arbitrator's interpretation of a collective bargaining agreement unless the contract as interpreted would violate some "explicit" public policy that is "well defined and dominant." *W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183 (quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)). Moreover, to justify invalidating an arbitrator's award, the court must rely on public policy which is derived "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.*

In the instant case, Burns argues that the arbitrator's award must be overturned pursuant to *Grace* and *Misco*. To succeed with such an argument, Burns must first show the existence of a clear public policy established in the laws and legal precedents. Burns must then demonstrate that

the arbitrator's award violated that public policy.

Burns claims that the public policy at issue in this case is one requiring strict adherence to nuclear safety regulations. To demonstrate the existence of such a policy, Burns points to the elaborate federal regulatory scheme governing nuclear safety. Burns argues that the Nuclear Regulatory Commission keeps a tight control over the nuclear industry by strict enforcement of federal safety standards, further evidencing a strong public policy in favor of nuclear safety. In addition, Burns relies on the Eighth Circuit's decision in *Iowa Electric Light and Power Co. v. Local Union 204 of the International Brotherhood of Electrical Workers*, 834 F.2d 1424 (8th Cir.1987). In that case, the court held that "there is a well defined and dominant national policy requiring strict adherence to safety rules." *Id.* at 1427. The court based its finding on "the volumes of safety rules that govern all nuclear power plants" as well as on several Supreme Court cases "recogniz[ing] the critical role of this federal safety system for nuclear power plants." *Id.* at 1428.

In line with the court in *Iowa Electric*, this court finds that a clear public policy exists favoring strict adherence to nuclear safety regulations, and that such a policy is firmly rooted in the laws and legal precedents. Although the question of what constitutes public policy is not always answered so easily, this court agrees with the court in *Iowa Electric* that "[n]othing could be plainer than the public interest in the safe operation of nuclear power plants that underlies [the] panoply of federal [nuclear] regulations." *Id.*

The outcome of this case, therefore, turns on whether Burns can demonstrate that the arbitrator's award is violative of the public policy favoring strict adherence to nuclear safety regulations. Burns argues the arbitrator's award violates that public policy by "forcing [Burns] to reinstate a security officer who has breached the public's trust and endangered security by leaving her post, notwithstanding unambiguous and repeated instructions that this

was impermissible." This argument, however, misses the point. *Grace* and *Misco* stand for the proposition that an arbitrator's decision may be overturned where his *award* violates public policy. In the instant case, the arbitrator awarded the reinstatement of Karen Sullivan. Thus, to justify overturning the arbitrator's decision pursuant to *Grace* and *Misco,* Burns must demonstrate that the *reinstatement* of Karen Sullivan would violate public policy. It is insufficient to argue, as does Burns, that Sullivan's *past conduct* violated public policy.

This distinction was clearly noted in *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, International Association of Machinists and Aerospace Workers,* 886 F.2d 1200 (9th Cir.1989). In that case, an auto mechanic was discharged after his employer accused him of performing negligent work on cars he had serviced. The mechanic's union filed a grievance, which resulted in an arbitrator's decision reinstating the mechanic to his job. The employer then filed suit in federal court, claiming that the arbitrator's decision should be vacated for violating public policy by endangering the health and safety of its customers and the public. The district court apparently accepted that argument and vacated the arbitrator's award. *Id.* at 1202.

Although a three-judge panel of the Ninth Circuit affirmed the district court's decision,[1] the district court's ruling was reversed upon the rehearing of the case en banc. *Id.* at 1204, 1217. In determining whether the arbitrator's decision was properly vacated by the district court, the en banc court concentrated on whether the arbitrator's *award*—reinstatement—violated public policy. The court ruled that in order to vacate an arbitrator's award on public policy grounds, a court must find that "the policy is one that specifically militates against the relief ordered by the arbitrator." *Id.* at 1212–13. Therefore, the court reasoned, "[i]f a court relies on public policy to vacate an arbitral award reinstating an employee, it must be a policy that

bars *reinstatement.*" *Id.* at 1212 (emphasis in the original).

Relying on the arbitrator's specific findings that the mechanic could be rehabilitated, and that a disciplinary measure less severe than discharge (suspension) would be sufficient to remedy the mechanic's past negligent conduct, the court found that the mechanic's future conduct would not likely run afoul of any public policy favoring traffic safety. *Id.* at 1213, 1217. As a result, the court held that even assuming the existence of a well-defined and dominant public policy favoring traffic safety, reinstatement of the mechanic did not violate that public policy. *Id.* The court therefore reversed the district court's decision vacating the arbitrator's award. *Id.* at 1217.

■ Prior to *Stead Motors,* other circuits properly recognized that in determining whether public policy mandates overturning an arbitrator's award that reinstates a discharged employee, a court must focus on whether the *reinstatement* violates public policy, not whether the employee's past conduct violated public policy. For example, in *Communication Workers of America v. Southeastern Electric Cooperative of Durant, Oklahoma,* 882 F.2d 467 (10th Cir.1989), an electric company challenged an arbitrator's decision reinstating one of its employees who had been discharged for sexually assaulting a customer. *Id.* at 468. The electric company argued that the employee's conduct violated the public policy of preventing assault and sexual oppression of women. *Id.* at 469. The court refused to overturn the arbitrator's award. Relying on the arbitrator's finding that the employee's conduct was an aberration which could be remedied by a punishment less severe than discharge, the court found that reinstatement of the employee would not violate public policy. *Id.* at 469–70.

Similarly, in *United States Postal Service v. National Association of Letter Carriers,* 839 F.2d 146 (3d Cir.1988), an arbitrator reinstated an employee who had

---

1. *See Stead Motors v. Automotive Machinists Lodge 1173,* 843 F.2d 357 (9th Cir.1988).

been discharged for firing gunshots into a supervisor's unoccupied vehicle. The Third Circuit reversed the district court's decision vacating the arbitrator's award. The court reasoned that even assuming the existence of a public policy favoring the protection of co-workers and customers from an employee's violent conduct, such a policy "does not *require* discharge for its fulfillment." *Id.* at 149–50 (emphasis in the original). The court noted that the arbitrator had expressly determined that the postal employee's violent conduct was the product of the "supercharged emotional atmosphere" created by the denial of his promotion, and that the employee "showed no proclivity to further aggression." *Id.* at 147, 149. Based on these factual findings of the arbitrator, the court ruled that reinstatement of the postal employee would not necessarily violate public policy. *Id.* at 150–51.

In determining whether to vacate an arbitrator's reinstatement of an employee who has been discharged for misconduct that arguably violates public policy, district courts have also focused on the likelihood that the misconduct will recur. *See e.g., Flushing Hospital and Medical Center v. Local 1199, Drug, Hospital and Health Care Employees Union,* 685 F.Supp. 55 (S.D.N.Y.1988) (rejecting a hospital's challenge to an arbitrator's award reinstating a nursing attendant who had been discharged for violating hospital rules because there was "no threat of continuing wrongful conduct" by the attendant); *Brigham and Women's Hospital v. Massachusetts Nurses Association,* 684 F.Supp. 1120 (D.Mass.1988) (arbitrator's award reinstating a nurse who had been discharged for failure to satisfactorily perform her duties did not violate public policy favoring competent nursing, since there was no showing that the nurse would fail to perform ably in the future). More importantly, the Seventh Circuit has also employed this same analysis. In *E.I. DuPont, supra,* an employee of DuPont was discharged when, during his work on the night shift, he attacked a supervisor, ran naked across company grounds, and damaged company property. 790 F.2d at 613. An arbitrator reinstated the employee after finding that his

outburst resulted from a mental breakdown and that the possibility of the employee having a future breakdown was remote. *Id.* The Seventh Circuit, accepting the arbitrator's finding that a recurrence of the employee's misconduct was remote, held that the arbitrator's ruling did not violate the public policy of promoting a safe working environment. 790 F.2d at 616–17. Therefore, the court reversed the district court's decision vacating the arbitrator's award on public policy grounds. *Id.*

In the instant case, Burns relies heavily on the decisions in *Iowa Electric* and *Delta Air Lines v. Air Line Pilots Association, International,* 861 F.2d 665 (11th Cir. 1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989). In *Iowa Electric,* the court overturned an arbitrator's award reinstating a nuclear power plant employee who had been discharged for violating nuclear safety regulations. The court found the award violative of a public policy favoring nuclear safety. *Id.* at 1430. In *Delta Air Lines,* the court affirmed a district court's ruling vacating an arbitrator's award which reinstated a pilot who had operated an airplane while drunk. The court held that enforcement of the award would violate "clearly established public policy which condemns the operation of passenger airliners by pilots who are under the influence of alcohol." *Id.* at 671. To the extent that these decisions are based on the fact that the employee's *past conduct* violated public policy, without giving any consideration to whether the *reinstatement (i.e.,* the employee's *future* conduct) would violate the public policy, this court finds those decisions an improper application of the public policy exception outlined in *Grace* and *Misco.* As the court aptly noted in *Stead Motors,*

> [T]he critical inquiry is not whether the underlying act for which the employee was disciplined violates public policy, but whether there is a public policy barring *reinstatement* of an individual who has committed a wrongful act.... If the performance of an illegal act while on the job [were] all that must be proved to demonstrate the violation of a public poli-

cy for purposes of *Grace* and *Misco*, then an arbitrator would be *prohibited* from reinstating any teamster who receives a speeding ticket while driving the company truck, or even an inventory clerk who commits a single act of petty theft. *Grace* and *Misco* do not countenance such results.

886 F.2d at 1215–16 (emphasis in the original).

One rationale for the decisions in cases such as *Iowa Electric* and *Delta Air Lines* is that the courts assumed or inferred that an employee who violates safety regulations will continue to do so, making his reinstatement, as well as his past conduct, violative of public policy. However, whether an employee is likely to engage in misconduct in the future is a factual determination not properly made by a reviewing court. *Misco*, 484 U.S. at 44–45, 108 S.Ct. at 374. *See Stead Motors*, 886 F.2d at 1213, 1217; *E.I. DuPont*, 790 F.2d at 617; *Brigham*, 684 F.Supp. at 1125. Therefore, this court will not engage in making substitutive or supplementary factual findings. This court's review is limited to the actual factual findings made by the arbitrator.

In this case, the arbitrator's decision makes no finding that Sullivan is likely to engage in similar safety violations in the future; his reinstatement award is based on his finding that Burns did not give Sullivan adequate advance notice that she could be subject to discharge for leaving her post for a few minutes to get an aspirin. As a result, this court has no factual basis on which to make a finding that Sullivan's reinstatement is likely to violate the public policy favoring strict adherence to nuclear safety regulations. Therefore, this court cannot overturn the arbitrator's award on public policy grounds.

## CONCLUSION

For the foregoing reasons, Burns' motion for summary judgment is denied; defendants' similar motion is granted.

IT IS SO ORDERED.