**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) LOCAL 771, Plaintiff,**

v.

**MICRO MANUFACTURING, INC., Defendant.**

**Civ. A. No. 95–70378.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 7, 1995.

Barry E. Solomon, Berkley, MI, for defendant.

Jordan Rossen, Ralph O. Jones, UAW International Union, Legal Department, Detroit, MI, for plaintiff.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff UAW is seeking to enforce an arbitration award reinstating a former employee of defendant Micro Manufacturing, Inc. The employee had been terminated because he physically assaulted the owner of his company. Plaintiff has filed a motion for summary judgment to confirm the arbitrator's award. Defendant contends that the arbitration award is contrary to public policy.

For the reasons stated below, the court will grant plaintiff's motion.

### I. Background

On January 31, 1994, William Homell was fired by his employer, Micro Manufacturing, Inc. ("Micro"). The termination stemmed from a confrontation that had occurred that morning between Homell and Micro's owner, John Sampson. Micro informed Homell's union representative that Homell was being terminated because he violated a shop rule prohibiting insubordination and the use of profane or threatening language. On February 3, 1994, the UAW filed a grievance on behalf of Homell seeking his reinstatement.

The UAW's grievance went before an arbitrator. On November 21, 1994, the arbitrator determined that just cause did not exist for the termination and that the termination did not comply with the procedural requirements of the collective bargaining agreement ("CBA"). As a result, the arbitrator directed Micro to reinstate Homell to his previous position and give him back pay from the date of the termination. On January 31, 1995, the UAW filed a complaint with this court seeking to enforce the arbitration award. On March 10, 1995, Micro attempted to file a motion to vacate the arbitration award. However, the court struck Micro's motion because it failed to comply with local court rules.

Because Micro failed to file a motion to vacate the arbitration award within ninety days of the entry of the award on November 21, 1994, Micro is barred from presenting any defenses except that the award is against public policy. *Occidental Chemical Corp. v. International Chemical Workers Union*, 853 F.2d 1310, 1317 (6th Cir.1988). As a result, the sole issue for the court to decide in the context of the UAW's motion for summary judgment is whether the arbitrator's decision should be rejected because it violates public policy.

In order to resolve this issue, the court must first set forth the facts surrounding Homell's termination as found by the arbitrator.[1] On the morning of January 31, 1994,

---

1. In his award, the arbitrator does not clearly set forth the facts as he found them. As a result, the

court is forced to rely upon a set of facts that the

grievant Homell reported to work and was disturbed to discover that the machine he operated was in poor condition. An hour after Homell's arrival, John Sampson, Micro's owner, approached Homell and the two discussed the condition of Homell's work station. Later that morning, another Micro employee appeared at Homell's station to replace him.

Homell was upset by this event and went to Sampson's office and asked for an explanation of why he had been replaced. Sampson responded by indicating that he would check with Bob Mize, a Micro supervisor, to determine Homell's next work assignment. At this response, Homell became even more agitated and stated that "he was not going to suck up anyone's spit." Homell then called Sampson a "fucking turkey." Sampson responded by pointing his finger at Homell and saying, "You do not talk to me that way." At this point, Homell grabbed Sampson's finger. Sampson then said, "You're out of here!" and proceeded to leave the office. As Sampson turned his back to walk out of the office, Homell shoved Sampson from behind. Homell was then ordered to punch out and leave the building. He was escorted by a company supervisor and a union representative. The company sent a formal notice of Homell's termination to the UAW that day.

Based upon these facts, the arbitrator found that Micro did not have just cause to fire Homell. Of key importance to the arbitrator was the fact that Homell had been fired by Sampson in violation of the CBA because a union representative was not present when Homell was terminated. According to the CBA, a "Committee/Steward will be present when an employee is issued a reprimand, disciplinary action or is discharged." Because the agreement allows Micro to exercise its right to terminate employees for cause only when it does so in accordance with the procedures set forth in the CBA, the arbitrator determined that Homell should be reinstated.

The arbitrator also relied upon the fact that Homell's personnel record was not produced by Micro for the arbitration hearing. As a result, the arbitrator found that Homell

must have had a good record with the company over his seventeen years of service, otherwise Micro would have produced any negative reports. Finally, the arbitrator indicated that the confrontation between Homell and Sampson was a result of both individuals losing their "cool," and that the use of profane language is commonplace on the shoproom floor.

Based upon these findings, the arbitrator directed Micro to reinstate Homell to his previous classification and seniority, and that he be given back pay, less any unemployment benefits or other employment earnings. The arbitrator also found that the award constitutes a written reprimand against Homell for his verbal and physical attack upon Sampson, and that any future incident will subject Homell to further discipline.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

 The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–*

parties have agreed were the facts as found by the arbitrator.

*Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings. *Id.*

## III. Analysis

■ Where an arbitrator's award violates public policy, the court may refuse to enforce the award. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *see also BPS Guard Servs. v. International Union, United Plant Guard Workers of America,* 735 F.Supp. 892, 894 (N.D.Ill.1990). This rule is a "specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Misco,* 484 U.S. at 42, 108 S.Ct. at 373. The Sixth Circuit has set forth the standard for determining whether an arbitration award violates public policy as follows:

> [T]he public policy exception to the general deference afforded arbitration awards is very limited, and may be exercised only where several strict standards are met. First, the decision must violate some explicit public policy that is well defined and dominant. This dominant public policy is to be ascertained by reference to laws and legal precedents and not from general considerations of supposed public interests. Second, the conflict between the public policy and the arbitration award must be explicit and clearly shown. Further, it is not sufficient that the "grievant's conduct for which he was disciplined violated some public policy or law," rather, the relevant issue is whether the arbitrator's award "requiring the reinstatement of the grievance ... violated some explicit public policy." *Interstate Brands,* 909 F.2d at 893. The courts have emphasized that this exception is limited and "does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy." *Misco,* 484 U.S. at 43, 108 S.Ct. at 373.

*Shelby County Health Care Corp. v. AFSCME, Local 1733,* 967 F.2d 1091, 1095 (6th Cir.1992) (some citation omitted). Thus, the crucial issue in this case is not whether Homell's conduct was contrary to public policy, but whether the arbitration award itself violates the law or some other explicit public policy. *See Interstate Brands Corp. v.*

*Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135,* 909 F.2d 885, 893 (6th Cir.1990), *cert. denied,* 499 U.S. 905, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991).

In *Interstate Brands,* the Sixth Circuit reversed a district court's decision vacating an arbitration award where a truck-driving employee had been suspended because of an arrest for off-duty drug and alcohol use. The Sixth Circuit found that the employee's conduct did not occur while on the job. In addition, the court found that state law only prohibited people from driving without a license, but that it does not prohibit people who have been convicted of drunk driving from driving a vehicle as part of his employment. Other courts of appeals have similarly found that an arbitrator's decision reinstating an employee did not violate public policy in cases involving factual circumstances similar to the facts of this matter where the illegal employee conduct complained of by the employer occurred on the job or was job related. *See E.I. DuPont de Nemours and Co. v. Grasselli Employees Independent Assoc. of East Chicago, Inc.,* 790 F.2d 611 (7th Cir. 1986) (court upheld reinstatement of naked employee who attacked supervisor and fellow employee and damaged company property during a mental breakdown), *cert. denied,* 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986); *Communication Workers of America v. Southeastern Electric Cooperative of Durant, Oklahoma,* 882 F.2d 467 (10th Cir.1989) (court upheld reinstatement of electric company employee who sexually abused a female customer while repairing electrical wires); *U.S. Postal Serv. v. National Ass'n of Letter Carriers,* 839 F.2d 146 (3d Cir.1988) (court upheld reinstatement of terminated postal employee who fired gunshots into his supervisor's unoccupied vehicle).

The Eighth and the Eleventh Circuit, however, have each upheld district court decisions vacating arbitration awards based upon public policy. *See Iowa Electric Light & Power Co. v. IBEW Local 204,* 834 F.2d 1424 (8th Cir.1987); *Delta Air Lines, Inc. v. Air Line Pilots Ass'n Int'l,* 861 F.2d 665 (11th Cir.1988), *cert. denied,* 493 U.S. 871, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989). In *Iowa Electric,* the Eighth Circuit refused to reinstate a nuclear power plant employee who had deliberately compromised a reactor safety system, despite the arbitrator's finding that the termination was too severe a sanction for the misconduct. The court found that there was a well-defined and dominant policy requiring strict adherence to nuclear safety rules. In *Delta Air Lines,* the Eleventh Circuit upheld the discharge of an employee who operated an airplane while under the influence of alcohol. The court noted that the illegal misconduct must be "integral to the performance of employment duties." *Delta Air Lines,* 861 F.2d at 671. These cases clash with the otherwise narrow scope given to public policy review of arbitration decisions.

In this case, the court finds that Micro has failed to show that the arbitrator's award reinstating Homell violates some explicit and well-defined public policy. There are no laws prohibiting employers from reinstating fired employees who physically assaulted the owner of the company. As a result, the court will not interfere with the decision reached by the arbitrator that Micro did not have just cause to fire Homell and that the termination of Homell did not comport with the procedural requirements of the CBA. Even though Homell's plainly improper and illegal conduct occurred at work and was integrally related to the performance of his duties, the fact remains that the arbitrator's decision does not violate any law or clear dictate of public policy. In addition, although Homell's conduct involves safety concerns similar to those raised in *Delta Air Lines* and *Iowa Electric*—especially given the recent spate of violence in the workplace—the court is not examining the legality or propriety of Homell's conduct, but rather the legality of the reinstatement.

The distinction drawn in *Interstate Brands* by the Sixth Circuit regarding off-duty versus on-the-job conduct does not comport with the Supreme Court's guidance in *W.R. Grace and Company v. Local Union 759,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) and *Misco. Cf. Monroe Auto Equipment v. UAW, Local 878,* 981 F.2d 261 (6th Cir.1992) (dissenting judge cites terminated employee's on-duty drug use as basis for public policy defense), *cert. denied,* ——

U.S. ——, 113 S.Ct. 2396, 124 L.Ed.2d 298 (1993). As the Ninth Circuit indicated in *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, International Ass'n of Machinists and Aerospace Workers,* 886 F.2d 1200, 1215–16 (9th Cir.1989), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990), a public policy defense to an arbitration award cannot rest upon the mere illegality of the underlying conduct of the terminated employee. This is true whether the conduct occurred while at work or off-duty, because

> [i]f the performance of an illegal act while on the job [were] all that must be proved to demonstrate the violation of a public policy for purposes of *Grace* and *Misco,* then an arbitrator would be *prohibited* from reinstating any teamster who receives a speeding ticket while driving the company truck, or even an inventory clerk who commits a single act of petty theft.

*Id.* (emphasis in original). Thus, instead of a mere citation to an illegal act committed by a terminated employee while performing an integral employment function, an employer seeking to vacate an arbitration award on public policy grounds must show that the award itself violates the law.[2] Because Micro has failed to make this showing, the court will grant the UAW's motion for summary judgment to confirm the arbitrator's award. Although Homell's conduct in this instance is deplorable, Micro gave up its unfettered right to eliminate such conduct when it bargained away its ability to terminate without resort to an arbitrator.

NOW, THEREFORE, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is **GRANTED** and the arbitration award in this matter is **CONFIRMED.**

SO ORDERED.

---

2. Although Micro has not cited a particular law that Homell violated during the incident in question, it is clear that his physical confrontation with Sampson amounts to misdemeanor assault and battery under MCLA § 750.81. In addition, Homell's reference to his boss as a certain type of fowl may possibly violate MCLA § 750.102 regarding the use of profane curses, although this little-used law is constitutionally questionable and the foul reference may not quite fit within the statute's purview.